Gerald MASONE, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 79 Civ. 1558.

United States District Court, S. D. New York.

Dec. 13, 1979.

Gerald Sheindlin, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Jane E. Bloom, Asst. U. S. Atty., New York City, Borge Varmer, Regional Atty., Region II, Frank V. Smith, III, Deputy Regional Atty., Department of Health, Education, and Welfare, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action, pursuant to 42 U.S.C., section 405(g), to review a final determination of the Secretary of Health, Education, and Welfare (the "Secretary") that plaintiff was no longer entitled to continuation of disability benefits. The Secretary moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The basic issue is whether the plaintiff no longer is "disabled" as that term is defined in the Social Security Act.[1] After a word-by-word reading and study of the entire administrative record including the exhibits and testimony taken at the hearing before the Administrative Law Judge (A.L.J.), the Court is persuaded that the Secretary's determination must be upheld.

Plaintiff, from 1954–1976, was a fireman with the New York City Fire Department. At the time of his retirement he was a lieutenant with the rescue squad, performing both administrative duties and leading men into fires. While he was with the Fire Department, plaintiff, from 1969–1975, also operated an auto school, a repair shop and acted as a driving instructor during his off hours. He also was licensed as a real estate salesman and is a graduate of the Cornell School of Dental Technology.

In January 1976 plaintiff took an early retirement from the Fire Department for a service-incurred disability stemming from a series of work-related injuries to his back. Plaintiff filed for disability benefits under the Social Security Act in February 1976 alleging inability to work as of July 21, 1975 due to back pains and pains in his left leg. He was awarded a period of disability, which was terminated as of September 30, 1977. Upon plaintiff's request for reconsideration, a hearing before an A.L.J. was held in November 1978. The A.L.J. found plaintiff was no longer under a statutory disability as of the date of termination. Upon administrative appellate review this decision became final in January 1979, following which this action for judicial review was commenced.

Plaintiff's allegedly disabling condition consists of low back pain with radiculopathy

---

1. 42 U.S.C. § 423(d)(1)(A). *See Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).

that transmits itself to his legs, neck and head, and which subjects plaintiff to feelings of exhaustion.[2] It is not disputed that plaintiff suffers from some impairment within the meaning of the statute.[3] There is no significant conflict in the medical evidence as to the diagnosis of plaintiff's condition. There is consensus among the six physicians who have examined plaintiff between 1975 and 1978 (including the Fire Department Medical Board and plaintiff's own treating physician, Dr. Reed) that plaintiff has a medically documented back injury described as "chronic low back syndrome." Similarly there does not appear to be any question that plaintiff does suffer pain and discomfort from his back condition.

The question presented by the record, however, is whether, considering his age, education and work experience, his ailment is such as to prevent him from engaging in any substantial gainful activity as defined in the statute.[4] The Secretary found that it was not. The Act requires that agency action be sustained if the decision is based on "substantial evidence" in the record, that is, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[5] In making this determination the Court must consider all the evidence in the record, including "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."[6]

It is not disputed that plaintiff cannot return to his former employment as a fireman. There is, however, substantial evidence that he is capable of engaging in other substantial, gainful activity in the national economy.

No medical evidence in the record suggests that plaintiff is incapable of gainful work. The Fire Department Medical Board, as early as 1975 when granting him his early retirement, concluded that plaintiff was "able to perform a suitable sedentary occupation." Indeed, plaintiff's own treating doctor, Dr. Reed, did not find plaintiff totally disabled. Rather, he found on January 13, 1978, only that plaintiff "is disabled *for his usual* work" (emphasis added). In October 1978—in the most recent report of plaintiff's condition based upon physical examinations conducted of plaintiff on January 17 and July 25, 1978—Dr. Reed reaffirmed his earlier diagnosis, found plaintiff's condition unchanged and that he "has continued to be incapacitated and disabled."

Even were Dr. Reed's opinions more favorable to plaintiff's claim of total disability, they are undermined by the findings of the four doctors who examined plaintiff and reported on his physical capacity between 1976 and 1978 at the behest of the Secretary. Thus, in 1976, Dr. Delavagas was of the opinion that plaintiff could walk 20 blocks, stand for an hour, sit for 2–3 hours, lift 25 pounds, grasp and manipulate normally but should avoid bending. Dr. Quatromani, in July 1977, found that plaintiff could stand for an hour or more, lift some weights, sit, bend, and grasp and manipulate. In January 1978, Dr. Bernanke determined that plaintiff could sit or stand "indefinite" (sic) though he could not lift weights. Finally, in February 1978, Dr. Biscaro, an orthopedic surgeon, concluded

---

**2.** Plaintiff also claims to have a heart condition and he has been examined for such. There does not, however, appear to be any evidence that this condition, if it exists at all, is the source of any disability.

**3.** A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

**4.** 42 U.S.C. § 423(d)(2)(A).

**5.** *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

**6.** *Kaminski v. Califano*, 465 F.Supp. 367 (S.D. N.Y.1979) aff'd 614 F.2d 1288 (2d Cir. 1979).

that Mr. Masone "can walk three to four blocks, standing (sic) four to six hours, lift up to 25 lbs., sit four to six hours, bending frequency is moderate to minimum. Grasp and manipulative ability is full." Indeed, plaintiff does not dispute the finding of the A.L.J. that beginning in July 1977 he had the functional capacity to walk, stand, lift, sit, bend and grasp.[7] But he does challenge the finding that such functional capacity would permit him to engage in substantial gainful activity and perform the jobs described by the vocational expert. The A.L.J.'s decision makes it clear that he fully and fairly considered the opinions of all the doctors, including that of plaintiff's own doctor, as well as the subjective complaints of plaintiff and his wife's observations.

Plaintiff's own description of his subjective state does not significantly bolster his case. He did testify at the hearing that he is in pain and that exertion makes it worse, and that he needs to feel free to lie down during the day. His wife testified that he is always in pain. However, plaintiff's only claim that the pain he suffers affected his residual functional capacity is that implicit in his seeking disability benefits. Additionally, plaintiff makes a number of admissions which weaken the evidence of the effect his subjective condition has on his ability to be gainfully employed; these suggest that he is prepared to work if the work is interesting and remunerative enough. For example, he testified that he requires no help with his personal needs and that he drives a medium amount. He further stated that he wants to work, that "if I can do something to hold my interest, I'd tolerate the pain"; that he has heard that traffic controllers are not required to remain seated for long periods of time and therefore he considers himself suited for such a job. Finally, Dr. Biscaro noted, in his report of February 1978, that plaintiff "states that he has no limitation in getting around and moderate mobility of his lower back."

In addition to the medical evidence indicating significant physical capacity in spite of his back condition and the indications in plaintiff's own testimony that he is not entirely incapable of working, a vocational expert testified at the hearing. She was of the view that, given plaintiff's background, skills and experience, and assuming him capable of the physical activities of which Dr. Biscaro found him capable in the most recent examination that made such an assessment, a variety of occupations existed in significant numbers in the region where plaintiff lives which he was capable of performing. These include quality control inspecting jobs and general clerical work.

In conclusion, the medical and expert evidence in the record amount to more than substantial evidence that plaintiff did not suffer from a statutory disability and that he is capable of engaging in substantial gainful work which exists in the region where he lives.

■ Plaintiff attacks the A.L.J. upon a veiled charge that he was derelict in his duty to "scrupulously and conscientiously probe"[8] into all the relevant facts since plaintiff was not represented by counsel. The A.L.J. is chided because he failed to advise plaintiff he had the right to an attorney. Plaintiff emphasizes that although the notice of hearing advised plaintiff that he had the right of representation, it failed to emphasize such representation was advisable, that it omitted specifically to state free legal services were available, and further failed to advise him that private attorneys were available to represent him on a contingency basis. In consequence, plaintiff contends that he did not knowingly waive his right to be represented by counsel. Upon this record both claims are utterly without foundation.[9] The record reveals

7. Record at 10.

8. *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975).

9. *Rosa v. Weinberger*, 381 F.Supp. 377 (E.D.N.Y.1978) cited to support plaintiff's position is

entirely inapposite since it involved a claimant with a 5th grade education who spoke no English. Moreover, the form criticized in that case was not the same as the one sent to plaintiff. This form, in use since approximately 1977, does inform the recipient of the availability of legal representation for those who cannot afford to pay for it.

an articulate, knowledgeable and experienced claimant—who was fully aware of his right to counsel; also, it abundantly establishes that the A.L.J. fulfilled his duty of "scrupulously and conscientiously probing" into and exploring all relevant facts.

Accordingly, the motion of the Secretary for judgment on the pleadings is granted and plaintiff's complaint is dismissed.