**Arkady FRANK, Plaintiff,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

**No. 93 CV 5437.**

United States District Court, E.D. New York.

May 1, 1996.

1. Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of P.L. 103–296, Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action.

Carolyn A. Kubitschek, Lansner & Kubitschek, New York City, for plaintiff.

Zachary W. Carter, U.S. Atty. by Annette Blum, Asst. U.S. Atty., Brooklyn, NY, for defendant.

### MEMORANDUM & ORDER

BLOCK, District Judge:

Plaintiff Arkady Frank ("Frank") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act"), seeking review of the denial of his application for Supplemental Security Income benefits ("SSI") under Title XVI of the Act by the Secretary of the Department of Health and Human Services ("HHS"). Both parties have filed motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In addition to several

other issues prevalent in Social Security appeals to district courts, this case addresses the responsibilities of HHS to adequately notify a claimant of his or her options for obtaining legal representation in writing prior to the administrative hearing and the ensuing responsibilities of the administrative law judge ("ALJ") whenever a claimant appears without an attorney. For the reasons that follow, the Court remands for additional proceedings.

## I.

### BACKGROUND

Frank, an attorney in the former Soviet Union for several years prior to coming to the United States, filed an application for SSI benefits on October 1, 1991, claiming disability due to a heart condition and memory loss. HHS denied Frank's application initially, and on reconsideration. In its reconsideration decision, HHS advised Frank regarding representation as follows:

> In having your case heard, you can represent yourself or be represented by a lawyer, a friend, or any other person. Contact your Social Security office for names of organizations that can help you.

(Tr. 43.) Frank then requested a hearing before an ALJ. HHS sent a subsequent notice informing Frank of the hearing date. The reverse side of the notification contained additional information regarding Frank's options for obtaining representation:

> REPRESENTATION AND FEES FOR REPRESENTATION: You may designate a person to represent you. If you are found entitled to Supplemental Security Income benefits, none of your benefits may be withheld by the Social Security Administration for payment of a fee to your representative.[2] If you are represented and your representative petitions to receive a fee, your representative must mail you a copy of the fee petition. The fee is subject to the approval of the Office of

Hearings and Appeals and when you receive your copy of the fee petition, you will have 20 days to comment, if you wish, concerning the fee your representative wishes to charge you. If the Office of Hearings and Appeals approves a fee for representation, payment of the fee in the amount approved will have to be settled between you and your representative.

(Tr. 21.)

On December 10, 1992, Frank appeared at the hearing without counsel. After Frank stated that he desired counsel and that he had not received the list of referral organizations from HHS, the ALJ adjourned the hearing to allow Frank to pursue free legal representation. At the subsequent hearing, held on January 14, 1993, Frank again appeared without counsel, but stated that he would like to proceed without the assistance of counsel even though he had an appointment with a legal aid organization later that day. The colloquy between Frank and the ALJ was as follows:

> [ALJ]: [W]e sent a letter on, on October 14, 1992, advising you of your right to representation. When you appeared on December 10, '92, you were given an adjournment to obtain representation. You were not able to do it, you were not able to obtain representation?
>
> [Frank]: They ... g[a]ve me an appointment for today only but I would like to proceed today.

(Tr. 175.) The ALJ then proceeded to conduct a brief hearing.

On June 15, 1993, the ALJ issued a short decision in which he determined principally that Frank's condition was not sufficiently severe to render him disabled and that, in any event, Frank was capable of performing his past relevant work as an attorney in the former Soviet Union. The ALJ's decision relied primarily on the opinion of a consulting physician, Dr. Antonio Deleon, who ex-

---

**2.** In *Bowen v. Galbreath*, 485 U.S. 74, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988), the Supreme Court held that the provisions found in 42 U.S.C. §§ 406(a)(4)(A) and 406(b)(1), which authorize judicial and administrative withholding in actions brought under Title II, do not apply to actions brought under Title XVI. *Id.* at 79, 108 S.Ct. at 895. *See* 42 U.S.C. § 1383(d)(2)(A) (incorporating 42 U.S.C. § 406(a) other than paragraph 4 under Title XVI). Thus, this sentence of the notification is unique to actions brought under Title XVI.

amined Frank once on February 12, 1992 at the request of HHS, and on the assessment of a vocational expert designated by HHS, Dr. Charles Plotz, who had never examined Frank and based his opinion on the medical record available at the time of the hearing even though the record was significantly supplemented after the hearing.

HHS sent Frank the ALJ's decision, which referred to Frank's options for obtaining legal representation if he chose to appeal:

You may appoint an attorney or other qualified person to represent you in any appeal you may file with the Appeals Council. Your local Social Security office has a list of groups that can help you find an attorney.

Some private attorneys do not charge a fee unless you receive benefits. Some legal services organizations can provide legal services free of charge if you meet the organization's qualifying requirements. A representative may not collect a fee for services performed in representing you in dealing with us unless we have approved the fee.

(Tr. 9.)

Frank's request for review of the ALJ's decision was denied by the Appeals Council on November 4, 1993, rendering the ALJ's decision the final decision of HHS. Frank thereafter brought this action and is now represented by counsel.

Frank seeks reversal or, in the alternative, remand arguing that: (1) the ALJ deprived Frank of a full and fair hearing by failing to adequately inform Frank of his right to counsel, conducting only a brief hearing with cursory examination of Frank, and failing to assist Frank as a *pro se* claimant in obtaining the relevant evidence for the record; (2) the ALJ's determination that Frank's alleged impairments did not meet or equal a listed impairment was not supported by substantial evidence; (3) the ALJ's determination that Frank could engage in his past relevant work as an attorney in the former Soviet Union was erroneous as a matter of law and not supported by substantial evidence; and (4) the ALJ improperly relied on Frank's daily activities in concluding that he was not disabled. HHS, on the other hand, argues that the ALJ's decision should be affirmed because it was supported by substantial evidence.

## II.

### *DISCUSSION*

Among HHS' basic responsibilities is the duty to provide a claimant with a full and fair hearing in accordance with the beneficent purposes of the Act and the regulations promulgated thereunder. *See Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982) (quoting *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir.1972)); *Smith v. Sullivan*, 776 F.Supp. 107, 112 (E.D.N.Y.1991) (Glasser, J.). This obligation emanates from the unique nature of a benefits proceeding. Unlike the adversarial nature of a trial, where the primary responsibility for developing the facts rests with the parties, a benefits proceeding is essentially nonadversarial in nature and imposes an affirmative duty on the ALJ to develop the record to ensure that all claimants receive a fair hearing. *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir.1990); *Echevarria*, 685 F.2d at 755. Among other things, this heightened duty provides the impetus for HHS' and the ALJ's obligation to provide notification regarding the options for obtaining legal counsel in a benefits proceeding as well as the ALJ's responsibilities to ensure that there are no significant gaps in the record and to accord the appropriate weight to a treating physician's opinion.

### A. The Right to Notification Regarding the Options for Obtaining Legal Counsel

Notwithstanding the nonadversarial nature of a benefits proceeding, the Second Circuit has recognized the benefits of counsel by imposing a higher duty on the ALJ when a claimant proceeds *pro se*. Thus, although the ALJ's duty to develop the record applies even where the claimant is represented by counsel, *see Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996); *Gecevic v. Secretary of Health & Human Servs.*, 882 F.Supp. 278, 287 (E.D.N.Y.1995) (Seybert, J.), "the ALJ is under a heightened duty 'to scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts[ ]' " where the claimant is unrepresented by counsel. *Cruz,* 912 F.2d at 11 (quoting *Echevarria,* 685 F.2d at 755) (citation and quotation omitted).[3] Therefore, a court must satisfy itself that the ALJ " 'adequately protect[ed] the rights of [a] *pro se* litigant by ensuring that all of the relevant facts [were] sufficiently developed and considered.' " *Echevarria,* 685 F.2d at 755 (quoting *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980)).

The law in the Second Circuit is thus clear that the nature of the ALJ's duty to develop the record turns on whether a claimant appears with or without counsel at a benefits proceeding. What is less clear, however, are the standards by which a court must evaluate whether a claimant's decision to proceed without counsel was based on adequate information. The Act and the regulations promulgated thereunder impose certain obligations on HHS to notify a claimant of the options for obtaining counsel. The Second Circuit has touched upon this obligation and the importance of counsel at a benefits proceeding generally in discussing an ALJ's failure to adequately discharge her or his heightened duty to a *pro se* claimant. *See, e.g., Lopez v. Secretary of Dep't of Health & Human Servs.,* 728 F.2d 148, 149–50 (2d Cir.1984); *Echevarria,* 685 F.2d at 755–57; *Hankerson,* 636 F.2d at 895; *Gold,* 463 F.2d at 43–44. However, no court in this Circuit has yet to clearly articulate what HHS' notification should encompass or when such notification should be given in order for a claimant to effectively waive that option. In *Echevarria,* the Second Circuit declined to address these issues, stating that "since we hold that remand is required ... [for failure to ensure a fair and adequate hearing], we do not need to decide whether Echevarria was

accorded adequate notice of his right to counsel and the possibility of free legal assistance[.]" *Echevarria,* 685 F.2d at 757 n. 4 (citing *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir. Unit B July 1981)). Other Circuits, namely the Fifth, Seventh, and Eleventh, have enunciated specific information that HHS' notification should contain before there can be an effective waiver.[4]

### 1. *The Scope of the Right*

■■■ As an initial matter, it is necessary to clarify what the cases in this and other Circuits casually refer to as the "right to representation" in a benefits proceeding. This "right" does not rise to constitutional dimensions. *See, e.g., Brandyburg v. Sullivan,* 959 F.2d 555, 562 (5th Cir.1992) (citing *Clark,* 652 F.2d at 403) ("The Supreme Court has never recognized a constitutional right to counsel at a SSA hearing."); *Evangelista v. Secretary of Health & Human Servs.,* 826 F.2d 136, 142 (1st Cir.1987) ("[T]he applicable standard in these 'nonadversarial' proceedings is well below the Sixth Amendment threshold."). As such, HHS is not obligated to provide counsel for the claimant, *see Lopez,* 728 F.2d at 149, or even to "guarantee the availability of free legal services[.]" *Clark,* 652 F.2d at 403. Rather, the "right to representation" articulated in these cases refers to a claimant's freedom to choose to be represented by counsel in a benefits proceeding.

■■■ In that regard, sections 406(c) and 1383(d)(2)(B) of the Act create a statutory *right to notice* of the options for obtaining legal representation in actions brought under both Title II (*e.g.,* DIB claims) and Title XVI (*e.g.,* SSI claims):

The Commissioner of Social Security shall notify each claimant in writing, together

---

3. This heightened duty applies even where the claimant is "nominally represented." *See, e.g., Echevarria,* 685 F.2d at 756 (finding that the claimant's nominal representation by a social services coordinator "did not suspend the ALJ's special duty to *pro se* claimants."); *Barrera v. Secretary of Health & Human Servs.,* 872 F.Supp. 24, 27 (E.D.N.Y.1995) (Seybert, J.) ("[T]he ALJ's fiduciary obligation [to a *pro se* claimant] to develop the record is not diminished where, as in the instant case, the claimant is nominally represented by an individual—in this case, ... [the

claimant's] husband—who is inexperienced with disability claims, and who demonstrates a lack of understanding of the techniques for introducing evidence to support a claimant's case.").

4. .The Court recognizes the overlap between the Fifth and Eleventh Circuit decisions. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) (adopting the former Fifth Circuit's decisions as binding precedent).

with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. §§ 406(c), 1383(d)(2)(B). The regulations promulgated pursuant to the Act reiterate this statutory directive. 20 C.F.R. §§ 404.1706, 416.1506. Thus, although the Act and accompanying regulations do not create an entitlement to counsel in a benefits proceeding, they do require that a claimant receive notification regarding the options for obtaining counsel.[5] Once a claimant is provided with adequate notification, (s)he may effectively waive the option to proceed with counsel either in writing or on the record before the ALJ.[6]

**5.** Courts in this and other Circuits have generally recognized, consistent with the Act and regulations, that a claimant must generally be made aware of his or her right to seek legal representation as one aspect of HHS' duty to provide a claimant with a full and fair hearing. *See, e.g., Robinson v. Secretary of Health & Human Servs.*, 733 F.2d 255, 257 (2d Cir.1984) ("The claimant is entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right.") (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir.1975)); *Echevarria*, 685 F.2d at 756–57 (stating that if claimant "had been adequately advised of the advantages of having experienced Legal Aid counsel," he would have chosen representation in the hearing before the ALJ); *Gold*, 463 F.2d at 43 ("Although the notice of hearing stated that the claimant could bring counsel or a representative to the hearing, the examiner did not suggest when she appeared alone, that she obtain legal aid."); *see also Craig v. Chater*, 76 F.3d 585, 591 (4th Cir.1996); *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir.1996); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir.1995); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994); *Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir.1991); *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir.1990); *Evangelista*, 826 F.2d at 142; *Clark*, 652 F.2d at 403; *Barrera*, 872 F.Supp. at 27; *Alvarez v. Bowen*, 704 F.Supp. 49, 52 (S.D.N.Y.1989).

**6.** Adequate notification is a prerequisite for the claimant's effective waiver of counsel. *See, e.g., Rosa v. Weinberger*, 381 F.Supp. 377, 381 (E.D.N.Y.1974); *Spears v. Heckler*, 625 F.Supp. 208, 218 (S.D.N.Y.1985); *Losco v. Heckler*, 604 F.Supp. 1014, 1020 (S.D.N.Y.1985); *see also Bin-*

## 2. *The Contents of the Notification*

Having determined the scope of the statutory right involved, the Court turns to discerning the contents of this notification. As noted, the Second Circuit has not provided a definitive answer. The Court thus considers the approach followed by the Fifth, Seventh, and Eleventh Circuits and concludes that there is support for adopting a similar approach in this Circuit. Those Circuits require that the notification should at least contain: (1) an explanation of the benefits of having an attorney to aid in the proceedings; (2) notification of the possibility of seeking free counsel or a contingency arrangement; and (3) notification regarding the statutory twenty-five percent withholding limitation on attorneys' fees in cases brought under Title II as provided in 42 U.S.C. § 406(a)[7] as well as the fee approval process generally.[8] *See Binion*, 13 F.3d at 245; *Ed-*

*ion*, 13 F.3d at 245 (stating that claimant may waive representation if he or she is properly informed with respect to obtaining representation).

Assuming that adequate notification is given, waiver could be accomplished by the claimant in writing or orally at the hearing. *See, e.g., Brown*, 44 F.3d at 932 (claimant signed waiver of right to counsel); *Evangelista*, 826 F.2d at 142 (claimant waived right in writing and orally at the hearing).

**7.** As noted, the twenty-five percent limitation applies only in cases brought under Title II. In cases brought under Title II, but not under Title XVI, there is a statutory twenty-five percent limitation on the amount of attorneys' fees that HHS can withhold for direct payment to the claimant's attorney. 42 U.S.C. § 406(a)(4)(A). Paragraph 4 is the only portion of § 406(a) not incorporated under Title XVI by 42 U.S.C. § 1383(d)(2)(A). *See supra* note 2. Likewise, the regulations promulgated pursuant to Title XVI do not contain a twenty-five percent limitation. *Compare* 20 C.F.R. § 404.1730(b) with § 416.1520. In cases brought under Title XVI then, it is sufficient for the notification to generally inform the claimant that all fees are subject to HHS' approval. *See infra* note 8.

**8.** Under either Title II or Title XVI, HHS will approve a fee which does not exceed twenty-five percent of the past-due benefits award up to $4,000 at the time a claimant receives a favorable award. 42 U.S.C. § 406(a)(2)(A) (expedited approval process under Title II) and § 1383(d)(2)(A) (incorporating this provision un-

424

*wards,* 937 F.2d at 585; *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir.1991); *Smith v. Schweiker,* 677 F.2d 826, 828–29 (11th Cir.1982); *Clark,* 652 F.2d at 403; *Vaile v. Chater,* 916 F.Supp. 821, 828 (N.D.Ill.1996); *see generally* Arthur J. Fried, *A Disability Appeal Primer: Appeals to Federal Court in Social Security and Supplemental Security Income Disability Cases,* 9 Soc.Sec.Rep.Ser. 971 (1985).

The need for the first element of the notification, an explanation of the benefits of counsel, is self-evident. Primarily, the claimant should be made aware that an attorney can assist in obtaining and presenting evidence, and preparing and questioning witnesses. The second element, notification of the possibility of seeking free counsel or a contingency arrangement, is necessary because " '[t]he information regarding the cost of any attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants.' " *Thompson,* 933 F.2d at 585 (quoting *Hauwat v. Heckler,* 608 F.Supp. 106, 109 (N.D.Ill.1984)). If the claimant does not qualify for free legal services, (s)he should be aware of the possibility of a contingency agreement since the regulations allow HHS to award attorneys' fees even where there is no award of benefits in cases brought under either Title II or Title XVI.[9] The third element, notification of the limitation on fees and the fee approval process, similarly relates to a claimant's potential financial concerns and should be included so as not to discourage a claimant from bringing a meritorious claim based on an

apprehension that the award will be significantly diminished by legal fees.

Cases in this Circuit support the rationale underlying these elements of proper notification embraced by the Fifth, Seventh, and Eleventh Circuits. *See Hankerson,* 636 F.2d at 895 ("In such cases where the claimant was '*handicapped* by lack of counsel' at the administrative hearing ...") (quoting *Gold,* 463 F.2d at 43) (emphasis added); *Losco,* 604 F.Supp. at 1020 ("[T]he ALJ [did not] adequately ensure that plaintiff ... appreciated the role that legal representation would play at that stage of the proceedings."); *Gold,* 463 F.2d at 43 ("Although the notice of hearing stated that the claimant could bring counsel or a representative to the hearing, the examiner did not suggest when she appeared alone, that she obtain legal aid."); *Rosa,* 381 F.Supp. at 381 ("Both Legal Aid and Brooklyn Legal Services were available to represent plaintiff without cost and ... [HHS] should have notified claimant of this fact."); *see also Guzman v. Califano,* 480 F.Supp. 735, 737 (S.D.N.Y.1979). *But see Masone v. Califano,* 482 F.Supp. 525 (S.D.N.Y.1979).[10]

The Court finds these elements compelling. They ensure that a claimant will be informed of the material issues relevant to his or her choice whether or not to pursue counsel. The Second Circuit would undoubtedly give its approbation to such salutary notification requirements if presented with the opportunity.

### 3. *The Timing of the Notification*

■ Having determined what the notification should contain, a related question

---

der Title XVI). Where the requested fees exceed this amount, an attorney must first petition HHS for approval of the fee. 20 C.F.R. §§ 416.1520, 416.1525 (discussing the process for fee approval in actions brought under Title XVI); *see* Harvey L. McCormick, *Social Security Claims and Procedures II,* § 763 at 357–59 (4th ed. 1991).

**9.** The regulations provide:

Although we consider the amount of benefits, if any, that are payable, we do not base the amount of fee we authorize on the amount of benefit alone, but on a consideration of all the factors listed in this section. The benefits payable in any claim are determined by specific provisions of law and are unrelated to the efforts of the representative. We may authorize a fee even if no benefits are payable.

20 C.F.R. §§ 404.1725(b)(2), 416.1525(b)(2); *see* Harvey L. McCormick, *Social Security Claims and Procedures II,* § 765 at 366 (4th ed. 1991).

**10.** In *Masone,* the court rejected the claimant's argument that he was not properly advised of the desirability of legal representation, the availability of free legal services, or the possibility of a contingency agreement. *Id.* at 528–29. The court stated that "[t]he record reveals an articulate, knowledgeable and experienced claimant who was fully aware of his right to counsel." *Id.* This Court finds the approach in *Masone* unnecessarily subjective because it suggests that notification of the benefits of counsel should turn on the ALJ's individual evaluation of each claimant's abilities. The better approach is for *every* claimant to be advised of these benefits in writing *prior* to the hearing. *See* discussion *infra.*

arises regarding when such notification should be given. Sections 406(c) and 1383(d)(2)(B) of the Act and the accompanying regulations appear to impose a rigid duty on HHS to send a claimant written notification regarding representation by an attorney together with notice of *each* adverse determination. There are several points during a claimant's quest for benefits under Title II or Title XVI when HHS might render an adverse determination: the initial determination, the reconsideration decision, the ALJ's decision, and the Appeals Council's decision.[11] Courts in other Circuits have not rigidly required written notification to be included with each adverse decision. Rather, they have found that, notwithstanding the mandates of the Act and regulations, sufficient notification can be given orally at the hearing. *See Thompson*, 933 F.2d at 584 (discussing the written notification provided by HHS prior to the hearing and the oral notification given by the ALJ at hearing); *Smith*, 677 F.2d at 828 ("A claimant cannot knowingly and intelligently waive his statutory right to counsel when he is not adequately informed of it *either* in a prehearing notice or at his hearing.") (emphasis added). There is, however, no requirement to give further notification at the hearing where the notice given prior to the hearing was adequate. *See, e.g., Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir.1996) (applying § 406(c) and § 404.1706 and concluding that, although "the customary and better practice would seem to be to place both the advisement and the waiver on the record during the hearing, neither the statute, ... nor the regulations ... require[d] any more advisement than was given.") (rely-

ing on *Garcia v. Califano*, 625 F.2d 354, 356 (10th Cir.1980)).

The preferable approach is to provide the claimant with adequate written notification prior to a hearing. Not only is this approach contemplated by the clear language of the Act and regulations but it also has the added benefit of expediency by providing the claimant with at least some opportunity to obtain counsel before the hearing, thus, minimizing the need for adjournment. The better role for oral notification is as a mechanism for ensuring that a claimant who appears *pro se* at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected. This approach is contemplated by the law of this Circuit. *See, e.g., Robinson*, 733 F.2d at 257 ("The claimant is entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right."); *Barrera*, 872 F.Supp. at 27 (same); *Alvarez v. Bowen*, 704 F.Supp. 49, 52 (S.D.N.Y.1989) (same); *Guzman*, 480 F.Supp. at 736 ("Disability applicants are notified of their right to counsel in the written notice of hearing, not only at the hearing"). Before accepting the claimant's waiver and proceeding with a hearing, the ALJ can easily review the written notifications sent to the claimant to verify their adequacy.[12] In the event that the written notifications are inadequate, the ALJ can provide oral notification on the record and entertain the possibility of adjourning the hearing to allow the claimant to obtain counsel.[13]

11. The application process is generally as follows: The claimant initiates the process by filing an application for benefits with HHS. HHS then renders an initial determination. If the claimant timely requests reconsideration of the determination, HHS will issue a reconsideration decision. If the claimant is still dissatisfied, he or she may request a hearing before an ALJ. If the claimant desires, he or she can seek additional review of the ALJ's decision by HHS' Appeals Council. *See* 20 C.F.R. §§ 404.900, 416.1400 (1995); *Perez v. Chater*, 77 F.3d at 44 n. 3. If the Appeals Council grants review, its decision is the final determination by HHS. If it does not grant review, the ALJ's decision becomes the final decision of HHS. The claimant can then seek review of HHS' final decision in federal district court. *See* 20 C.F.R. §§ 404.981, 416.1481 (1995); *Per-*

*ez*, 77 F.3d at 44; *see also Brandyburg*, 959 F.2d at 557–58.

12. The Court notes that HHS could also obtain a claimant's waiver in writing. *See supra* note 6. Even if the waiver is in written form, however, HHS must still ensure that the claimant received adequate notification for that waiver to be effective, which would presumably involve the same sort of inquiry by the ALJ.

13. The regulations allow an ALJ to adjourn the hearing for "good cause shown." 20 C.F.R. § 404.936(b). Adjournment may be proper where a claimant first receives notification of his or her options for obtaining counsel orally at the hearing and expresses the desire to pursue that

### 4. Summary of the Right to Notification

In sum, the Court determines that HHS should provide written notice to a Social Security claimant, prior to an administrative hearing, containing information regarding the benefits of counsel, the possibility of free counsel or a contingency arrangement, and the limitation on direct fee payments in Title II cases and the fee approval process generally in both Title II and Title XVI cases. When a *pro se* claimant appears before an ALJ, the ALJ should verify that the claimant received such prior notification and, if the notification was inadequate, provide oral notification on the record at the hearing. The ALJ should also be sensitive to whether the claimant, once notified, has had a meaningful opportunity to secure counsel and, if not, to consider adjourning the hearing to provide that opportunity.

### B. The Need for Remand in This Case

#### 1. The Notifications Frank Received

■■■ Given these precepts, the Court concludes that the notifications Frank received were inadequate. Although the written notifications Frank received prior to the hearing described the fee approval process, they were inadequate insofar as they did not ad-

vise him of the benefits of counsel or the possibility of free legal services or a contingency arrangement. In *Clark,* for example, the Fifth Circuit found inadequate language that was significantly more comprehensive and expansive than the written notifications given to Frank.[14] The court in *Clark* commented:

> This notice ... completely fails to notify the claimant of all of the important facts touching upon her right to, and opportunity to have free representation at the hearing.... It seems clear that the natural assumption from this notice is that any representative whom the claimant may seek will have the right to demand a fee for these services.

*Clark,* 652 F.2d at 403.[15] In the absence of proper, prior written notification, the ALJ should have provided the requisite information to Frank orally at the hearing. Although Frank was notified of the possibility of obtaining free legal counsel at the first hearing, he was still not informed of all of the important considerations affecting his choice to pursue counsel. Namely, Frank had never been informed of the benefits of having counsel or the possibility of a contingency agreement should he not qualify for free

option. *See Thompson,* 933 F.2d at 585 (The claimant's "attempt to secure counsel through legal aid strongly suggests that he desired representation."); *Alvarez,* 704 F.Supp. at 52 ("A more thorough inquiry by the ALJ could have revealed ... [the claimant's] desire to proceed with counsel, and allowed the ALJ to inform ... [the claimant] of the possibility of adjourning the hearing until he obtained counsel.").

**14.** The notification in *Clark* provided as follows:

> While it is not required, you may be represented at the hearing by an attorney or other qualified person of your choice. If you wish attorney representation and cannot afford it, your social security office will provide a list of offices where you may be able to obtain representation. Any fee which your representative wishes to charge must be approved by the Bureau of Hearings and Appeals, and your representative must furnish you with a copy of the fee petition. When you receive your copy of the petition, you will have a period of 20 days to comment, if you wish, regarding the requested fee. Payment of any approved fee for any services rendered on your behalf with respect to your claim for Supplemental Securi-

ty Income is a matter to be settled between you and your representative. If you are found entitled to Disability Insurance Benefits and your representative is an attorney, 25 percent of your back benefits will normally be withheld pending approval of a fee for your attorney. If the approved fee is less than the 25 percent withheld, the amount of the fee will be paid to your attorney from the amount withheld and the difference will be sent to you. If the approved fee is more than 25 percent of your back benefits, the 25 percent withheld will be paid to your attorney and the difference is a matter to be settled between you and your attorney. If your representative is not an attorney, none of your benefits will be withheld, and payment of any approved fee is a matter to be settled between you and your representative.

*Clark,* 652 F.2d at 401.

**15.** The third written notification, which Frank received after the hearing with the ALJ, suffers from the same basic defects. Thus, even if Frank had received this notification prior to the hearing, it would not have adequately informed him of his options for obtaining representation.

legal services. As in *Clark*, the notifications in this case did not contain sufficient information to facilitate Frank's knowing and intelligent waiver of representation at the second hearing.

■ Even though Frank was not so informed, he must have appreciated the importance of counsel since he chose to pursue the legal aid option prior to the second hearing. Frank's attempted waiver of representation at the second hearing, however, was defective not only for want of adequate notification but also because of his expressed desire to obtain counsel. The ALJ should have adjourned the second hearing given Frank's statement that he had an appointment that very day with a legal services organization. The Court does not contend that an ALJ must always adjourn a hearing to allow a claimant the opportunity to secure representation, but an adjournment is appropriate where, as here, it is clear that the claimant is not only desirous of obtaining counsel but has also taken significant and meaningful steps toward that goal.

■ Notwithstanding the importance of notification regarding legal representation,

courts have nevertheless refused to remand in the absence of a showing that the claimant was prejudiced by the lack of counsel. *See, e.g., Evangelista*, 826 F.2d at 142 ("[I]t is clear that the absence of counsel, without more, creates no basis for remand."). Some courts in other Circuits have drawn a distinction between the types of prejudice that a claimant must establish depending on whether there was effective or ineffective waiver. This Court declines to draw such a distinction, concluding that the higher standard adopted by other courts in the case of ineffective waiver is already encompassed by this Circuit's imposition of a heightened duty on an ALJ in *pro se* cases generally: for remand, the claimant must demonstrate that the ALJ failed to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.[16]

Applying the same standard for remand in cases involving effective and ineffective waiver does not, however, invalidate the importance of adequate notification. The potential benefits of having counsel at a benefits proceeding are well recognized. Indeed, the

---

**16.** Several courts have drawn a distinction between cases involving effective and ineffective waiver. *See, e.g., Brown*, 44 F.3d at 935; *Kelley v. Heckler*, 761 F.2d 1538, 1540 n. 2 (11th Cir. 1985); *Clark*, 652 F.2d at 404. In *Kelley*, the court stated:

> *Clark* indicates a slightly different standard for reviewing whether a claimant received a full and fair hearing depending on whether the unrepresented claimant effectively waived his right to representation. If there has been a waiver of right to counsel, claimant must show "clear prejudice or unfairness" caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand to the Secretary.... If the right to counsel was not waived, the ALJ is under a "special duty" to develop a full and fair hearing by conscientiously probing into all relevant facts.... "This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel."... However, under this standard, "we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ,"

*Kelley*, 761 F.2d at 1540 n. 2 (citations omitted). The Court rejects this distinction as semantic and difficult to apply. Even if there is a meaningful distinction between the two standards, the

Court finds that the higher standard imposed by these courts in cases involving ineffective waiver is already encompassed in the Second Circuit's approach in *pro se* cases generally, which imposes a heightened duty on the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. Moreover, courts in this Circuit, which have found ineffective waiver, have employed this Circuit's general approach. *See, e.g., Alvarez*, 704 F.Supp. at 52–53 (stating that "[l]ack of counsel 'would not affect the validity of the hearing unless the claimant demonstrates prejudice or unfairness' " and then proceeding to apply the heightened duty imposed on ALJ by Second Circuit in *pro se* cases) (quoting *Heisner v. Secretary of Health, Educ. & Welfare*, 538 F.2d 1329, 1331 (8th Cir. 1976)); *Spears*, 625 F.Supp. at 218 ("It is apparent that ... plaintiff did not freely and knowingly waive her right to have an attorney present. However, under the approach followed by courts of this circuit in reviewing the denial of benefits to a disability claimant who appeared *pro se* at the administrative level, this Court must ascertain whether the ALJ nonetheless adequately protected plaintiff's rights at the administrative hearing."); *Losco*, 604 F.Supp. at 1020 (remanding where plaintiff did not knowingly and intelligently waive right to have counsel and ALJ failed to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts) (citations and quotations omitted).

heightened duty placed on the ALJ by this Circuit is an attempt to compensate for the disadvantage of proceeding without counsel. However, the pragmatic value of this heightened standard is problematic considering the frequency with which courts are constrained to remand cases, including this one, because of an ALJ's failure to discharge his or her duty to a *pro se* claimant, and underscores the value of counsel. *See, e.g., Cruz,* 912 F.2d at 11 ("The scant record herein, which consists of a thirteen-page transcript, reveals a host of lost opportunities to explore the facts."); *Echevarria,* 685 F.2d at 755–56 (claimant did not receive a fair and adequate hearing because of significant "gaps" in the record); *Fernandez v. Schweiker,* 650 F.2d 5, 9 (2d Cir.1981) ("[E]xamination of the claimant herself on the subject of her subjective symptoms by the administrative judge covers little more than a page."); *Hankerson,* 636 F.2d at 895 ("The record is replete with instances where the ALJ should have questioned plaintiff more fully concerning various aspects of his testimony."); *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975) (noting that the court had remanded numerous cases for further development when there were gaps in the administrative record); *Gold,* 463 F.2d at 44 (remanding where there were "serious uncertainties or gaps in the record"); *see also Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63 (2d Cir.1980); *Stieberger v. Sullivan,* 738 F.Supp. 716 (S.D.N.Y.1990), *modified,* 801 F.Supp. 1079 (S.D.N.Y.1992); *see generally* Arthur J. Fried, *A Disability Appeal Primer: Appeals to Federal Court in Social Security and Supplemental Security Income Disability Cases,* 9 Soc.Sec.Rep.Ser. 971 (1985) (discussing the high reversal and remand rate in Social Security cases). The high rate of remand may well be a function of the fact that, "[u]nder our system of adjudication, no hearing officer (or judge) will ever be an equivalent substitute for a lawyer devoted exclusively to a party's interests. Cases such as the present one will repeatedly arise until the legal services bar translates into action the now commonplace observation that agen-

cy cases are usually won or lost at the agency level." [17] *Guzman,* 480 F.Supp. at 737. Adequate notification may alleviate the pressure on ALJs and courts to protect a claimant's interests by encouraging claimants to pursue legal representation at an early stage of the administrative process.

**2. *The Gaps in the Record***

 The ALJ here failed to adequately discharge his heightened duty to a *pro se* litigant as evidenced by gaps in the record which might have been obviated by the presence of counsel during the benefits proceeding. In *Echevarria,* for example, the court remanded because of the ALJ's failure to inquire into the "full degree of the [claimant's] pain and the extent to which it prevent[ed] him from working[,]" and the ALJ's failure to obtain more detailed statements from the claimant's treating physicians and other relevant medical reports. *Echevarria,* 685 F.2d at 756. The court noted that "[w]hile none of the errors standing alone is sufficient to upset the Secretary's determination, their total effect deprived ... [the claimant] of a full consideration of his claim." *Id.* at 757.

The record here contains similar gaps. Only six pages of the thirteen page hearing transcript were devoted to the questioning of Frank. As in *Hankerson,* "[t]he record is replete with instances where the ALJ should have questioned ... [the claimant] more fully concerning various aspects of his testimony." *Hankerson,* 636 F.2d at 895. For example, the ALJ did not inquire into the circumstances surrounding Frank's hospitalization for heart problems in the former Soviet Union:

[ALJ]: What were you hospitalized for in the Soviet Union?

[Frank]: This was a pre (INAUDIBLE) condition.

[ALJ]: When?

[Frank]: Either '87 or '88.

[ALJ]: Do you live by yourself or with your family?

17. The court in *Guzman,* however, nevertheless found adequate a notification that did not contain either an explanation of the benefits of coun-sel at a hearing or information regarding the twenty-five percent limitation on fees. *Id.* at 736.

(Tr. 182.) The ALJ's questioning of Frank with respect to his alleged depression was equally superficial:

[ALJ]: Were you treated for depression?

[Frank]: Correct.

[ALJ]: Where? Where?

[Frank]: Maimonides.

[ALJ]: When?

[Frank]: All the time. I complain about it all the time.

[ALJ]: And has the neurologist been treating you or some other person?

[Frank]: Mostly Dr. Cohen.

(Tr. 181.) Furthermore, the ALJ asked Frank only two questions regarding his alleged pain:

[ALJ]: Do you have any pain?

[Frank]: (INAUDIBLE) no pain and I have diabetes and I have pain in my knee (INAUDIBLE).

[ALJ]: Does that prevent you from walking, standing or doing anything else?

[Frank]: Yes.

(Tr. 182.) In general, the ALJ's examination of Frank focused on who treated him, how often he was treated, and what medications he was taking, but notably absent was any substantial inquiry into the nature of Frank's alleged impairments or their effect on his ability to work. The ALJ's cursory examination of Frank was insufficient considering the importance to be accorded a claimant's testimony. *See Echevarria,* 685 F.2d at 755.

In addition, it is unclear whether the ALJ obtained complete medical records for Frank. The ALJ stated during the hearing that the records from Maimonides Medical Center were incomplete, noting that Frank had many more appointments listed on his appointment card than there were records. The ALJ did obtain additional reports from Maimonides, but the administrative record still appears incomplete since, in light of

Frank's testimony that he visited Maimonides more than monthly, it lacks medical records from the four months proceeding the hearing.[18] In view of the ALJ's affirmative duty to ensure that the record is complete, *see Echevarria,* 685 F.2d at 756, on remand the ALJ should assist Frank in obtaining all of the relevant medical evidence.

### 3. *The Treating Physician Rule*

 Although the gaps in the record are themselves sufficient to warrant remand, the ALJ also discounted the opinion of Frank's treating physician, Dr. Cohen, without explanation. The Secretary must give a treating physician's opinion "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in ... [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir. 1995). Even where the treating physician's conclusions are contradicted by substantial evidence, they are still entitled to "some extra weight" although the "resolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler v. Sullivan,* 3 F.3d 563, 570 (2d Cir.1993) (relying on a Social Security Ruling approved by the Second Circuit). Nevertheless, the weight an ALJ accords to a treating physician's opinion, when not controlling, must be supported by "good reasons" and based on several factors including: (1) the length and frequency of the relationship with the treating physician; (2) the nature and extent of the treatment relationship; (3) the supportability of the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927.

Although Dr. Cohen's conclusions regarding Frank's conditions are not entirely clear,

---

**18.** The record includes reports, though several are difficult if not impossible to read, from Frank's visits on: January 16, 1992 (Tr. 93); February 21, 1992 (Tr. 94–95); March 27, 1992 (Tr. 96–97); April 10, 1992 (Tr. 147); May 11, 1992 (Tr. 90); May 26, 1992 (Tr. 91–92); July 30, 1992 (Tr. 160); August 3, 1992 (Tr. 158); and September 8, 1992 (Tr. 155). Reports from October 1992 to January 1993, when the hearing was held, are absent from the record.

he did note that Frank's activities were limited. (Tr. 95.) In this respect, Dr. Cohen's findings may contradict the findings of Dr. Deleon that Frank was able to sit without limitation and had only slight limitations in standing, walking, lifting, carrying, pushing and pulling due to knee pain. (Tr. 84.) *See Thompson v. Sullivan,* 957 F.2d 611, 614 (2d Cir.1992) ("The opinion of a consulting physician who examine[s] the claimant once generally does not constitute substantial evidence on the record as a whole, particularly when contradicted by other evidence."); *Smith v. Sullivan,* 776 F.Supp. 107, 111 (E.D.N.Y. 1991) (Glasser, J.) (finding that the conclusory reports of consulting physicians who examined claimant only once did not constitute substantial evidence). Moreover, if the ALJ rejected Dr. Cohen's findings because they were conclusory or not supported by specific clinical data, he should have specifically directed Frank to obtain a more detailed explanation from Dr. Cohen. *See Cruz,* 912 F.2d at 12.[19] On remand, the ALJ must consider Dr. Cohen's analysis or provide good reasons for the weight the ALJ accords to it.

Because the Court finds sufficient inadequacies in the record to warrant remand, the Court declines to comment on the ALJ's reliance on Frank's daily activities or whether there is substantial evidence to support a finding of nondisability in this case. The Court does, however, consider the appropriate standard for determining past relevant work in this case to provide clarification on remand.

19. At the hearing, the ALJ did tell Frank that he would give him an additional fourteen days to "provide any medical documentation or opinion regarding ... [his] limitations." (Tr. 186.) Frank, however, responded that he did not think he could get the information that soon.

20. The five-step sequential process for determining disability benefits was recently restated by the Second Circuit in *Perez v. Chater:*

The definition of "disabled" is the same for purposes of receiving SSD and SSI benefits. Compare 42 U.S.C. § 423(d) with 42 U.S.C. § 1382c(a). The Secretary has promulgated a five-step process for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working. *Perez,* 77 F.3d at 46.

## C. Past Relevant Work

Frank argues that the ALJ's finding that Frank could engage in his past relevant work as an attorney in the former Soviet Union was incorrect because the ALJ ignored the fact that "[t]he work of a lawyer in the former Soviet Union was considerably different than that of a lawyer in the United States, and the difference between the Soviet and American legal systems was fundamental." (Pl.Mem.Supp. at 17–18.) Frank's comparison between the work of an attorney in the former Soviet Union and the work of an attorney in the United States, however, is misplaced.

The fourth step of the sequential evaluation process for determining disability benefits asks whether the claimant can engage in her or his past relevant work.[20] This case poses the interesting situation where the claimant's past relevant work occurred in a foreign country and does not appear to have an exact counterpart in the United States. Social Security Ruling 82–40 provides:

If a claimant can meet the sitting, standing, walking, lifting, manipulative, intellectual, emotional and other physical and mental requirements of a past job, he or she is still functionally capable of performing that job regardless of the fact that the individual no longer resides in the country where the past work was performed. It is only after a claimant proves that he or she

is not able to do his or her previous work that the burden shifts to the Secretary to show that there is work available in the U.S. national economy which the claimant can do (the fifth and last step of the sequential evaluation process).

Thus, pursuant to this Ruling the relevant inquiry is whether Frank can perform his past relevant work as an attorney in the former Soviet Union regardless of whether a counterpart exists in the United States.

■■■ Although Social Security Rulings do not have the force of law, they are entitled to deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989). The Second Circuit has not yet considered the propriety of Ruling 82–40, but several other courts have upheld its validity. *See, e.g., Pass v. Chater,* 65 F.3d 1200, 1205–06 (4th Cir.1995); *Garcia v. Secretary of Health & Human Servs.,* 46 F.3d 552, 557 (6th Cir.1995); *Quang Van Han,* 882 F.2d at 1456; *Luansaysongkham v. Sullivan,* No. 89–1909–R(P), 1991 WL 259259, at *2–3 (S.D.Cal. Aug. 2, 1991); *Martinez v. Bowen,* 685 F.Supp. 70, 71–72 (S.D.N.Y. 1988); *see also Lopez v. Shalala,* Nos. 89 C 6482, 90 C 392, 1994 WL 478547, at *11 (N.D.Ill. Aug. 31, 1994).

The rationale behind Ruling 82–40, which initially appears counter-intuitive, is based on the different considerations encompassed by the fourth and fifth steps of the five-step sequential process used in evaluating an application for disability benefits. The fourth step in the evaluation process, which addresses a claimant's past relevant work, "concentrates on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it." *Pass,* 65 F.3d at 1204. It is "[o]nly at step five ... [where the burden shifts to the Secretary that] the existence of job opportunities become[s] relevant." *Id.* The distinction between the steps arises from Congress' intent "to distinguish sharply between unemployment compensation and the disability benefits provided by the Act." *Id.* at 1207 (citing *Garcia,* 46 F.3d at 559).

Based on the record, it appears that the ALJ applied the correct analysis. On remand, however, the ALJ must evaluate Frank's physical and emotional ability to perform his past relevant work as an attorney in the former Soviet Union considering any additional information obtained in response to the Court's foregoing comments.

### III.

### *CONCLUSION*

In ordering remand, the Court has concluded that the "evidence of record [does not] overwhelmingly support[ ] a finding" of disability. *Thompson,* 957 F.2d at 614; *see Simmons II v. United States R.R. Bd.,* 982 F.2d 49, 57 (2d Cir.1992) (reversal appropriate where remand would serve no purpose). Thus, Frank's motion for reversal is denied. Frank's alternative motion for remand, however, is granted and HHS' motion is consequently denied. Accordingly, this case is remanded for additional proceedings in accordance with this Memorandum and Order.

**SO ORDERED.**