Stella M. **EARP**,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION.**

No. 4:00CV328.

United States District Court,
E.D. Texas,
Sherman Division.

Sept. 17, 2001.

James Michael Sloan, Law Offices of Michael Sloan, McKinney, TX, for plaintiff.

Steven MacArthur Mason, Assistant U.S. Attorney, U.S. Attorney's Office, Tyler, TX, for defendant.

*MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE.*

PAUL N. BROWN, District Judge.

Came on for consideration the Report of the United States Magistrate Judge in this action for judicial review of the administrative denial of social security disability insurance benefits, this matter having been heretofore referred to United States Magistrate Judge Robert Faulkner pursuant to 28 U.S.C. § 636. Having received the report of the United States Magistrate Judge pursuant to its order, and no objections thereto having been timely filed, this Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and adopts same as the findings and conclusions of the Court. It is, therefore,

**ORDERED, ADJUDGED** and **DE-CREED** that the decision of the Administrative Law Judge shall be and is hereby **REMANDED** to the Commissioner for further consideration. All motions by either party not previously ruled on are hereby **DENIED.**

The Order referring this case to the Magistrate Judge is hereby **VACATED.**

*REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

FAULKNER, United States Magistrate Judge.

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for supplemental security income ("SSI"). After carefully reviewing the briefs of the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be remanded.

*HISTORY OF THE CASE*

Plaintiff originally filed an application for SSI on March 24, 1980, alleging disability due to seizures and mental impairment resulting from childhood head injuries at age 3 (TR 114–117, 45–47). On May 2, 1980, Plaintiff was found disabled due to "mental deficiency, severe, IQ 42" under Listing 12.05(B) (TR 118). On November 1997, Plaintiff was notified that her disability status would end as of January 1998 pursuant to a continuing disability review (TR 119–128, 130–132). Plaintiff appealed this determination of cessation of benefits. A hearing was held before the ALJ on June 10, 1999 (TR 30–112). Plaintiff was not represented by counsel at the hearing.

On November 19, 1999, the ALJ determined that Plaintiff was no longer disabled due to medical improvement related to Plaintiff's ability to work (TR 24). After the Appeals Council denied claimant's re-

lief, the ALJ's decision became final leading to judicial review.

## STATEMENT OF THE FACTS

Plaintiff was born on February 12, 1960, making her a 39 year old female at the time of administrative hearing. Plaintiff has not attended school since age twelve (TR 270). Plaintiff has been on SSI all of her adult life and has no work history (TR 203).

Plaintiff was found disabled on March 24, 1980. The report notes that medical documentation needed to be finalized (TR 118). On April 14, 1980, Plaintiff underwent a consultative psychological examination by Dr. Randy Crittenden (TR 199–200). Dr. Crittenden administered the WAIS test which revealed a full scale IQ of less than 41 (TR 200). In his report, Dr. Crittenden suggested that Plaintiff might be malingering. Dr. Crittenden did not request additional testing nor did he complete a residual functional assessment.

School records indicate that on September 8, 1970, Plaintiff's intelligence testing illustrated Plaintiff had a full scale IQ of 76 (TR 184).

On April 11, 1997, Plaintiff underwent a psychological examination at the Denton State School (TR 192–193). Plaintiff's full scale IQ was found to be 71 (TR 192). A medical profile was prepared which showed complaints of temper tantrums, nosebleeds and mind wandering from one subject to another. The impression was functioning at borderline level of testing but not mentally retarded.

On August 14, 1997, Plaintiff underwent a psychological consultative examination by Dr. Jeffrey Siegel (TR 212–216). Dr. Siegel's intelligence testing revealed a full scale IQ of 48. Dr. Siegel disputed these results and found that Plaintiff was functioning at the borderline range of intelligence with a full scale IQ of 70–75.

Dr. Siegel's prognosis was as follows:

Ms. Earp's prognosis is fair. While she demonstrates low intellectual abilities and a history of poor adaptive functioning, she appears to be exaggerating her difficulties to ensure continued support. While her level of functioning is higher than that which she is trying to portray, *she does exhibit poor judgment and social skills and will likely continue to experience vocational and interpersonal difficulties throughout her life. It seems likely that she will have difficulty functioning independently without some form of support her daily activities* (TR 215)(Emphasis added).

Dr. Siegel did not complete a residual functional capacity assessment. Plaintiff was seen by Dr. Paul Flavill, a neurologist in June 1996 for her seizure disorder. His impression as follows:

Reported seizures. Conflicting information that she was taking medicines and yet a Dilantin level obtained June 3 showed none detectable. I will obtain an electroencephalogram recording. In the meantime as there is some question of efficacy of the Dilantin and phenobarbital, based on her history I will try her on Tegretol . . . (TR 203).

On June 26, 1996, the EEG was normal. On November 15, 1997, Plaintiff was seen by Dr. Thong T. Vu. Plaintiff received medications for her seizures (TR 227).

Plaintiff was also seen by Dr. G.F. Keltch from May 1998 until the date of the hearing. On May 28, 1998, Dr. Keltch assessed that Plaintiff had a seizure disorder and prescribed medication. In January 1998, Depakote was prescribed. On January 19, 1999, Dr. Keltch reported:

Pt. Has also had 2 episodes of seizure activity per neighbor-Neighbor states pt

become very combative unable to control self (TR 281).

Dr. Keltch further found that Plaintiff exhibits possible complex partial seizure disorder (TR 280).

On August 20, 1999, Dr. Keltch wrote a letter which stated as follows:

Stella Earp has been a patient of mine since May 28, 1998. I feel that due to her multiple medical problems, it would be in the best interest of all concerned that she continue to not work ... (TR 296).

In his January 1999 chart notes, Dr. Keltch recommended that Plaintiff receive a neurological evaluation. On February 11, 1999, Dr. Walter Taylor conducted a neurological examination. Dr. Taylor's impressions were as follows: history of mental retardation without clear evidence of retardation; partial complex epilepsy without collateral history; and patient on disability and applying for Social Security disability as well (TR 299).

Dr. Taylor made the following recommendation:

I have no clear idea whether the history is reliable or even accurate. In order for us to properly evaluate her, she needs formal neuopchometric testing evaluating for mental retardation. I question whether she is indeed retarded. I agree with the use of Depakote at this time. She should be given a trial for 4–6 weeks. Increasing the dose to 500 mg or 1000 mg TID may be necessary. Levels should be checked and maintained between 50–100 at trough levels. In addition, I have started her on Elavil 25 mg QHS. She is to have a head MRI and sleep deprived EED then follow-up with me in 1 month.

At the administrative hearing, Plaintiff testified that she did not know her address, she could not recall what schooling she had had, she has never worked for pay, that she cannot cook, she does not have a license, she receives help buying groceries, and she watches television (TR 40–51). Plaintiff's father and a friend also testified.

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After a discussion of the medical data regarding Plaintiff and her hearing testimony, the ALJ made the prescribed sequential evaluation. The ALJ found that after November 1997, Plaintiff could perform the full range of work at all exertional levels diminished by seizure precautions and moderate limitation in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, maintain punctuality, interact appropriately with the public, get along with coworkers or peers, respond appropriately to change in work settings or travel in unfamiliar places or use public transportation. The ALJ relied upon the vocational expert testimony and found that these restrictions did not preclude performance of a number of jobs available in significant numbers in the national economy.

## STANDARD OF REVIEW

In an appeal under § 405(g) this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir.1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th

Cir.1985); *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983). This Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano,* 588 F.2d 958, 959, (5th Cir.1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler,* 750 F.2d 479, 484 (5th Cir.1985).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish an eight-step process which are used when benefits cease due to medical improvement. 20 C.F.R. § 416.994. First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. Second, the claimant is considered disabled if his impairment corresponds to an impairment in the Listings of Medical Impairments. Third, the ALJ determines whether medical improvement has occurred. Fourth, the ALJ must determine whether or not any medical improvement is related to the ability to engage in basic work activities. Fifth, if there has been no medical improvement or it is found that the medical improvement is not related to the ability to work, the ALJ must consider whether any of the exceptions apply. Sixth, if medical improvement is shown to be related to the ability to do work or if one of the first group of exceptions to medical improvement applies, the ALJ must decide if the claimant has a current impairment or a combination of all current impairments which are severe. Seventh, if the claimant's impairments are severe, the ALJ must assess her current ability to engage in substantial gainful activity. Eighth, the burden shifts to the Administration to show that there are other jobs existing in significant numbers in the national economy that claimant is able to make successful vocational adjustment considering her age, education, work experience and residual functional capacity.

## ANALYSIS

Plaintiff asserts the following three issues for appeal: (1) whether the ALJ erred in proceeding with the hearing despite Plaintiff's failure to knowingly and intelligently waive her right to counsel; (2) whether the ALJ properly evaluated the medical evidence; and (3) whether the ALJ erred in interpreting the vocational evidence.

■ In Plaintiff's first issue for appeal, Plaintiff asserts that the ALJ erred in proceeding with the hearing despite her failure to knowingly and intelligently waive her right to counsel.

At the hearing, the following exchange took place:

ALJ: also, I want to mention to you that you have the rights to have a representative, If you want one. Sometimes you can get a representative free of charge for legal services. That depends on what your income and assets are ...

ALJ: Only the legal services could tell you whether your income and assets are sufficiently limited, that they might, that you might be financially qualified for free legal representation. But, even if you're financially qualified for free representation legal services can not take every case.

CLMT: Yes, sir.

ALJ: It does not take every case. So, they might be unable to take your case due to budgetary restrictions. If you wanted to hire an attorney you could, you'd have to arrange it yourself. Most attorneys will work on what is called a contingent fee basis. That means they're paid only if the case is successful. In a successful case there may be a

fee of several thousand dollars. Now, in a, in a cessation case, the fee agreement might be based on one-fourth of the benefits from the cessation date until the final decision comes out, up to $4,000.00. If you don't want to pay a fee, of perhaps several thousand up to $4,000.00 even in a successful case, you may not wish to hire an attorney. Now, you don't have to appoint an attorney as a representative. You could appoint anyone ... There are many people with attorneys who do not receive benefits or benefits are ultimately ceased. It depends on the facts, the law, and the application of the law to the facts. It is true that an attorney can sometimes be helpful to you, either in making sure all the required evidence is gathered, in interviewing you prior to the time of the hearing, making sure certain questions are asked by you, and also in examining or cross-examining expert witnesses. All of that may make the, make an attorney valuable to you. It depends on the facts of the case, the skill of the attorney, and the amount of actual time and effort the attorney puts into the matter. A paid attorney, of course, will charge a fee usually in the nature of what I just described and you have to evaluate whether you want to pay a fee like that out of your benefits. And that's something that you'd have to decide for yourself. So, before we go on further do you have any questions on the attorney issue?

CLMT: No, sir. Sir, we've already, a lawyer told us if I have to have a lawyer, she's going to take the case, sir. If I have to go, you know, I was denied this time. Then this lawyer will take it, she said.

ALJ: All right. Well, that's up to you. In other words, you don't want to have a hearing present at the hearing, you don't want to have an attorney present at this hearing. You might get an attorney to appeal the matter. That's what you decided?

CLMT: Yes, sir (TR 36–38).

Two separate notices that recommended Plaintiff seek legal assistance were sent to Plaintiff (TR 28, 29, 251–253). Plaintiff cannot read or write.

Plaintiff asserts that everything that happened with respect to the ALJ's conduct having to do with the waiver of counsel violated the law in the Fifth Circuit. Plaintiff cites the Court to *Gullett v. Chater*, 973 F.Supp. 614 (E.D.Tex.1997).

In *Gullett,* Judge Justice found:

A social security claimant has a statutory right to counsel at a social security hearing. 42 U.S.C. § 406. Any waiver of this right must be knowingly and intelligently effected. *Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir.1996). Thus, even if the claimant states in unequivocal terms that he is waiving his right to counsel, if inadequate notice was provided concerning the scope of that claimant's right, waiver will be deemed invalid.

To ensure valid waiver of counsel, the ALJ must notify the social security claimant of the following: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency fee arrangement, and (3) the limitation of attorney's fees to twenty-five percent of past due benefits and the required court approval of the fees ... Moreover, as for the second notice requirement, when legal services groups exist in the claimant's jurisdiction whose purpose is to handle civil claims such as the one filed on behalf of the claimant, the Commissioner is obligated to inform the social security claimant of these services ... *Id.* at 620–621.

The Court further found that notice should be given prior to the hearing and that the written notification should be supplemented with oral notification at the hearing to make sure that the claimant has been made aware of his options. The ALJ should inquire as to whether the claimant has a meaningful opportunity to secure counsel and if not consider adjourning the hearing to provide for that opportunity. *Id.* at 621.

■ However, if the Court finds that a proper waiver was not given, reversal should only occur when the claimant can show that he was prejudiced. To establish prejudice, a plaintiff must show that he "could and would have adduced evidence that might have altered the result." *Id.* (*quoting Brock,* 84 F.3d at 728 (citation omitted)).

Plaintiff concedes that the ALJ probably informed Plaintiff of the three things required in *Gullett,* but asserts that the ALJ's empathized comments constituted back-handed slaps at lawyers and whether having a lawyer would really be helpful to Plaintiff. Plaintiff further asserts that her limited mental abilities and illiteracy make the notice invalid. Plaintiff asserts that she was prejudiced in the development of the medical record and proper development of the vocational evidence. Specifically, Plaintiff asserts that counsel could have cross-examined the medical expert and could have subpoenaed one or more of Plaintiff's treating physicians. Plaintiff also argues that counsel could have cross-examined the vocational expert.

In this case, the ALJ found that Plaintiff suffered from borderline intellectual functioning. Plaintiff argues that in case such as this, a heightened standard should apply due to a diminished mental capacity. Plaintiff asserts that she did not fully understand what the ALJ was telling her with respect to waiving counsel and the importance of having counsel present. Plaintiff asserts that the ALJ should have appointed an attorney ad litem to consult with the Plaintiff and advise the ALJ whether the Plaintiff is making a competent waiver of counsel.

After reviewing the record and hearing testimony, the Court has serious reservations whether Plaintiff fully understood what she was doing. The Plaintiff was illiterate. Plaintiff lacked the mental abilities to conduct a proper cross-examination of the vocational and medical experts. Since there is conflicting evidence in this record regarding whether Plaintiff is mentally retarded, the Court must find that she has not properly waived her right to counsel. The Court also finds that Plaintiff suffered prejudice in the areas of development of medical and vocational evidence. This case should be remanded for further review.

■ Plaintiff's second issue for appeal is whether the ALJ properly evaluated the medical evidence concerning Plaintiff. Plaintiff asserts that there is no evidence of "medical improvement" pertaining to her condition as defined in the regulations. Plaintiff asserts that all that exists are varying reports pertaining to her IQ. Plaintiff points to the Disability Hearing Officer decision that the original report which formed the basis for the prior disability finding was in error allowing the report of Dr. Siegel to be considered in place of the original report. Plaintiff asserts that there is not substantial evidence to support a finding of medical improvement.

Plaintiff points to Plaintiff's treating physician, Dr. Keltch. Dr. Keltch found that due to her multiple medical conditions, she could not work. The ALJ found that Dr. Keltch's opinion was not qualified since he was not a vocational expert and

that the opinion was not consistent with other evidence. Plaintiff asserts that Dr. Keltch's opinions were entitled to controlling weight and cites 20 C.F.R. § 404.1527.

Although this opinion is brief and conclusory, the ALJ should have recontacted Dr. Keltch, especially in light of fact that an illiterate claimant was representing herself at the hearing. Substantial evidence does not support rejection of this opinion. In a typical case, this kind of statement would not require remand. However, considering the state of the record, upon remand the ALJ should recontact Dr. Keltch.

Finally, Plaintiff asserts that the ALJ erred in interpreting the vocational evidence. Plaintiff asserts that in a case like this there is a need for an attorney to cross-examine the vocational expert. Plaintiff asserts that there was no real cross-examination of the expert. Plaintiff cites the following from the hearing:

> ALJ: Now, do you have any, any questions that you want to ask either of the two experts regarding their testimony? CLMT: I can hardly. See I, I like when I, I can't even hardly talk, as you notice. When I get real scared, what would cause me to freeze up. I mean, to normally freeze up, because I, I can't do nothing really. I can't, I can't even make a bed right. And I don't know why (TR 80).

Plaintiff also asserts that the evidence illustrates that Plaintiff would not be able to perform competitive gainful employment. Plaintiff points to Dr. Siegel's prognosis for Plaintiff when he found that "she does exhibit poor judgment and social skills and will likely experience vocational and interpersonal difficulties throughout her life" and "will have difficulty functioning independently without some form of support in her daily activities" (TR 215). Plaintiff asserts that this opinion was not

taken into consideration by the ALJ in his hypothetical to the expert. The Commissioner does not respond to this argument. Upon remand, further vocational expert testimony should be given or the ALJ must properly reject these opinions.

## RECOMMENDATION

Pursuant to the foregoing it is RECOMMENDED that the decision of the Administrative Law Judge be REMANDED for further review.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Nettles v. Wainwright,* 677 F.2d 404, 408 (5th Cir.1982) en banc.

June 16, 2001.