Leroy GULLETT

v.

Shirley CHATER, Commissioner of the Social Security Administration, Defendant.

No. 6:94 CV 936.

United States District Court, E.D. Texas, Tyler Division.

March 20, 1997.

William K. Kimble, East Texas Legal Services, Tyler, TX, for Plaintiff.

Steven MacArthur Mason, Asst. U.S. Atty., Tyler, TX, for Defendant.

JUSTICE, District Judge.

## *MEMORANDUM OPINION*

### I. *Introduction*

Leroy Gullett, plaintiff in the above-entitled and numbered civil action, appeals the denial of his application for Title II supplementary security income benefits by the Commissioner of the Social Security Administration ("Commissioner"). Gullett also filed a motion for declaratory judgment alleging that the court's failure to identify his case as a motion that has been pending for more than six months violates the Civil Justice Reform Act of 1990, 28 U.S.C. § 476. These two matters were referred to the Honorable Judith Guthrie, United States Magistrate Judge. The Magistrate Judge issued a report and recommendation, concluding that this action be dismissed and that the motion for declaratory judgment be denied. Gullett has objected to the report and recommendation, requiring de novo review of the record in light of the objections. After such review, it is concluded that the Magistrate Judge's report and recommendation should be adopted in part and rejected in part, and that, because Gullett did not effectively waive his right to an attorney and was thereby prejudiced, this matter should be remanded to the Commissioner for another hearing.

### II. *Background*

The Magistrate Judge's report sets out in sufficient detail the facts of this case.[1] As a result, only a brief summary of the facts is necessary for purposes of this opinion. Gullett filed an application for benefits in June 1992, alleging that he became disabled in January 1985, due to post-polio syndrome. His application was denied, whereupon he requested and received a hearing before an Administrative Law Judge ("ALJ") who, on March 22, 1994, issued a decision denying benefits. Gullett's subsequent request for review by the Appeals Council was denied on September 22, 1994. Gullett exhausted his administrative remedies, and filed this action.

---

1. Gullett objects to the Magistrate Judge's "findings of fact" in that they are incomplete. The Magistrate Judge's report includes a section discussing the facts of this case. It is found that this section is not exhaustive of the facts in this case, nor was it meant to be. Rather, the section simply provides an overview of the facts of Gullett's case. This court recognizes that the administrative record provides important supplemental facts to this case.

In order to receive supplemental security income benefits, a claimant must be "disabled," which is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). An individual is under a disability only if his impairment or impairments are so severe that they not only prevent the performance of his past work, but also, considering his age, education, and work experience, prevent the successful performance of any other work that exists in the national economy. *Id.* § 423(d)(2)(A). The Commissioner follows a five-step, sequential process in evaluating a disability claim:

1. Is the claimant currently engaging in substantial gainful activity?

2. Is the alleged impairment severe?

3. Does the claimant have an impairment or combination of impairments that meet or equal those listed in 20 C.F.R. § 404, subpt. P, app. 1 (1995)?

4. Does the impairment prevent the claimant from performing his past relevant work?

5. Does the impairment prevent the claimant from performing any other work?

*See* 20 C.F.R. § 404.1520 (1995); *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A conclusion at any step that a claimant is disabled or not disabled ends the inquiry. *Bradley v. Bowen,* 809 F.2d 1054, 1056 (5th Cir.1987). The burden is on the claimant for the first four steps, then shifts to the Commissioner at the fifth step. *Ferguson v. Schweiker,* 641 F.2d 243, 246 (5th Cir. Unit A 1981). In this case, the ALJ concluded that Gullett was not disabled on or before June 30, 1990, which was the date Gullett's Title II insured status expired under the Act. Specifically, the ALJ concluded, at the fourth step, that Gullett's impairment did not prevent him from performing his past relevant work as an upholsterer See 20 C.F.R. § 416.920(e) (1995).

Gullett on the other hand, who suffered polio as a teenager, alleges that, beginning in 1985, he began to suffer from post-polio syndrome rendering him totally disabled, although he was not diagnosed with post-polio syndrome until September 9, 1991, a little over fourteen months after the expiration of his insured status. On October 3, 1991, an osteopathic physician wrote a letter stating that Gullett suffers from post-polio syndrome rendering him "100 percent disabled." Gullett contends that his post-polio syndrome impairs the use of his hands, causes him severe pain in his arms and legs, and limits his ability to stand to only short periods of time.

As the Magistrate Judge states in her report, "post-polio syndrome" is described by the Social Security Commission in the Program Operations Manual System (POMS) as follows:

> For the purposes of evaluation under the disability programs, the late effects of polio refer to new symptoms and neuromuscular manifestations which result in new functional loss in an individual with a prior history of acute polio. This functional loss typically occurs after a long period (more than 10 years and generally 20–40 years) of stability. The etiology of these problems is not yet known and not all polio survivors experience these late effects. Precise data are not yet available, but it may be that about 25 percent of the estimated 300,000 or more surviving individuals who had polio are experiencing new problems affecting their ability to carry out accustomed activities. These late neuromuscular effects are permanent and usually slowly progressive. There is no known treatment.

POMS DI 24580.010.

Although the Commissioner found that Gullett "has experienced severe symptoms of post polio syndrome," the Commissioner concluded that the record "does not show severe or disabling symptoms of post polio syndrome on or before June 30, 1990." R. 19.[2]

**2.** The record of this case from the administrative level is cited to as "R." and includes the page number of the record.

"The claimant's testimony regarding pain and limitations was indicative of current problems but was not sufficiently credible to support a finding of disability insofar as alleged pain and functional limitations related to impairments as they existed on and before June 30, 1990." R. 20. Furthermore, the Commissioner concluded:

> Observations of treating and examining physicians (for the period of time ending June 30, 1990) and objective medical test results have not revealed disabling functional restrictions imposed by pain or other symptoms. The record is lacking for signs and findings one would expect to support a degree of pain or other symptom(s) that might have been disabling before June 30, 1990.

*Id.* Thus, in rejecting Gullett's claim for benefits, the Commissioner indicates that Gullett very well may be presently disabled as a result of post-polio syndrome, but finds that the post-polio syndrome was not disabling on or before June 30, 1990.

Gullett asserts three points of error in the Commissioner's rejection of his application for benefits. First, the ALJ applied an improper legal standard in finding that Gullett waived his right to be represented by counsel at his hearing. Second, by failing to utilize the testimony of a medical advisor to establish the onset date of disability, the ALJ erred in finding that Gullett could perform his past relevant work as an upholsterer. Finally, the ALJ improperly failed to develop the record concerning Gullett's prior application for disability benefits under Title II. The Magistrate Judge rejected all three of the claims.

### III. *Analysis*

#### A. **Waiver of Counsel**

■ A social security claimant has a statutory right to counsel at a social security hearing. 42 U.S.C. § 406. Any waiver of this right must be knowingly and intelligently effected. *Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir.1996). Thus, even if the claimant states in unequivocal terms that he is waiving his right to counsel, if inadequate notice was provided concerning the scope of the claimant's right, waiver will be deemed invalid.

■ To ensure valid waiver of counsel, the ALJ must notify the social security claimant of the following: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of the fees. *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981); *see also Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991). Moreover, as for the second notice requirement, when legal service groups exist in the claimant's jurisdiction whose purpose is to handle civil claims such as the one filed on behalf of the claimant, the Commissioner is obligated to inform the social security claimant of these services. *Clark*, 652 F.2d at 403. All three of these notice requirements serve important functions:

> The need for the first element of the notification, an explanation of the benefits of counsel, is self-evident. Primarily, the claimant should be made aware that an attorney can assist in obtaining and presenting evidence, and preparing and questioning witnesses. The second element, notification of the possibility of seeking free counsel or a contingency arrangement, is necessary because [t]he information regarding the cost of any attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants. If the claimant does not qualify for free legal services, (s)he should be aware of the possibility of a contingency agreement since the regulations allow HHS to award attorneys' fees even where there is no award of benefits in cases brought under either Title II or Title XVI. The third element, notification of the limitation on fees and the fee approval process, similarly relates to a claimant's potential financial concerns and should be included so as not to discourage a claimant from bringing a meritorious claim based on an apprehension that the award will be significantly diminished by legal fees.

*Frank v. Chater*, 924 F.Supp. 416, 424 (E.D.N.Y.1996) (internal quotations and footnote omitted).

Furthermore, notice should generally be provided in writing prior to a hearing.. The ALJ should then provide oral notification at the hearing to "ensure[ ] that a claimant who appears *pro se* at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Id.* at 425. The ALJ should also inquire as to whether the claimant had a meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity. *Id.* at 426.

▐ Based on these standards, it is found that Gullett was inadequately informed of his right to counsel at his social security hearing. At Gullett's social security hearing, the following exchange took place: The ALJ told Gullet, "[T]he law requires that you are sure that you fully understand what you're entitled to in this matter. You have the right to have an attorney or representative of your choice present at this hearing to help you present your case." R. 26. Gullett responded, "Yes, sir." *Id.* The ALJ continued: "They told you all about this when you stated (INAUDIBLE) of the documents for the hearing. You're not obligated to have an attorney or representative, and if you do have one if there's any expense involved it would be at your expense. So I take it that since you've appeared here today without an attorney or representative you're willing to waive this tight and are ready to go ahead with the hearing at this time." Gullett responded, "Yes, sir." *Id.* This is the only evidence in the record of the notification that Gullet received concerning his right to counsel.

This notice completely failed to notify Gullett of his right to counsel, and the record does not contain any preheating written notice.[3] The ALJ did not inform Gullett of the manner in which an attorney could have aided in the proceedings, of the opportunities

for free legal services available in East Texas, of the possibility of obtaining an attorney on a contingent fee basis, or of the limitation of attorney's fees to 25 percent of past due benefits and required court approval of any such fees. As a result, Gullet's waiver of counsel was invalid.

▐ However, to merit reversal of the ALJ's decision, a claimant who does not validly waive his right to counsel must prove that he was thereby prejudiced. To establish prejudice, Gullett must show that counsel "could and would have adduced evidence that might have altered the result." *Brock,* 84 F.3d at 728 (quoting *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984)). It should be emphasized that Gullet only need establish that such evidence might have altered the result; he need not establish that such evidence would have unequivocally resulted in the grant of benefits.

Gullett contends that he was prejudiced because counsel would have developed the facts relating to the onset date of Gullett's disability in order to establish that Gullett was disabled on the date he was last insured for social security coverage. As discussed in further detail below in section III.B., the onset date of Gullet's disability is a crucial issue in this case. The ALJ indicated that in just a little over a year after Gullet's eligibility for benefits expired, Gullet might have been disabled. Yet, there is no evidence in the record regarding the onset date of this disability. The onset date of a disability is a complicated concept and is difficult to establish in a hearing, especially for a claimant such as Gullet who has only a ninth grade education. See Social Security Ruling 83–20 ("SSR 83–20") ("With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling....."). Recognizing that the onset date of a disability is difficult for a layperson to establish, SSR 83–20 requires an ALJ to seek the assistance of a medical advisor whenever the evidence is ambiguous and the onset date

---

**3.** There is an indication in the record that written notice was provided to Gullett, when the AU stated at Gullett's hearing, "They told you all about this when you stated (INAUDIBLE) of the

documents for the hearing." R. 26. However, there is no further evidence of this notice in the record.

must be inferred. If provided with counsel, Gullett would have been aware of this right and pursued it at the hearing. He could have presented independent evidence regarding the onset date of his disability or have at least created an ambiguity regarding the onset date, thus triggering the requirement of an independent medical advisor. For example, he could have provided evidence, such as medical evidence, describing the history and symptomatology of post-polio syndrome. *See id.* While one of Gullett's doctors provided a letter dated October 3, 1991, which stated that Gullett was disabled as a result of post-polio syndrome, R. 99, Gullet's attorney could have sought out additional information from this physician and other physicians to provide evidence from which the ALJ could find that Gullett was disabled on June 30, 1990.

■■■ Moreover, it is found that Gullett was prejudiced by the ALJ's failure to meet his duty to develop the record. Regardless of whether or not waiver of counsel was valid, the ALJ has a heightened duty in cases where a claimant is unrepresented by counsel "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schweiker,* 651 F.2d 408, 414 (5th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). This duty requires a scrupulous examination of the claimant in regards to his injury, daily routine, pain, and physical limitations. *See generally Brock v. Chater,* 84 F.3d 726, 728 (5th Cir.1996); *Carrier v. Sullivan,* 944 F.2d 243, 245 (5th Cir.1991); *James v. Bowen,* 793 F.2d 702, 704–05 (5th Cir.1986). Where the ALJ fails to meet this duty, a court must not hesitate to remand, if an adequate showing is made that the claimant was prejudiced. *Id.* Moreover, to give teeth to the requirement of adequate notice, in cases where adequate notice was not provided, the Seventh Circuit has shifted the burden to the Commissioner to show that the ALJ adequately developed the record. *Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir.1994). This court holds that

burden shifting should also be adopted in the current case.

■■■ It is found that the Commissioner has failed to establish that she discharged her special duty to develop the facts of this case. Further, it is found that Gullett was thereby prejudiced. First, although the ALJ discredited Gullett's testimony that he could not perform his past relevant work as an upholsterer, the ALJ failed to elicit adequate testimony concerning the physical and mental demands of Gullet's upholstery job. For example, although Gullett provided evidence that he had limited use of his hands, the ALJ did not ask Gullett the extent to which fine mechanical movements with his hands are required as an upholsterer. Although Gullett provided evidence that he suffered from depression and anxiety, the ALJ failed to ask Gullett questions relating to the extent to which his job is compatible with his mental impairments. Although Gullett testified that he sometimes cannot walk without crutches, the ALJ failed to ask Gullett how much walking is required in his job and whether walking on crutches impairs his ability to work. Such evidence is very pertinent to a determination of Gullett's disability.

■■■ Second, the ALJ failed to sufficiently inquire into the scope of the daily activities in which Gullett engages. In discrediting Gullett's claims of pain, the ALJ relied in part on a statement in Gullett's application records that he helps with paperwork. Yet, the ALJ failed to question Gullett on his ability to do paperwork, such as how much time he can spend doing paperwork without his pain interfering with his work. Although Gullett testified he could answer the phone, the ALJ failed to ask Gullett how frequently he could answer the phone before he needed to rest and how, given his claimed inability to grip small objects, he was able to grip the phone. *See Rivera v. Chater,* 942 F.Supp. 178, 184 (S.D.N.Y.1996). Finally, as discussed above, the ALJ failed to elicit adequate facts concerning the onset date of Gullett's disability.[4] These omissions are all

---

4. The ALJ's findings are also found to be inadequate because, although Gullett's wife appeared with him at the hearing, the ALJ made no attempt to ask Ms. Gullett questions concerning Gullet's condition. *See Cowart v. Schweiker,* 662

F.2d 731, 735 (11th Cir.1981) (failure to question spouse regarding claimant's position supported conclusion that ALJ failed to explore all relevant facts).

significant, especially in light of the ALJ's heightened duty in this case to scrupulously and conscientiously explore all relevant facts. If Gullett had been represented by counsel, the attorney would have significantly assisted Gullett by questioning Gullett about the impact of his physical and mental impairments on his ability to perform his work as an upholsterer. If the ALJ had inquired into these areas, it is likely that Gullett could have established that he was disabled on or before June 30, 1990.

## B. Medical Advisor

Gullett's second complaint with the Commissioner's finding is that the Commissioner failed to utilize a medical advisor to establish the onset date of disability, as required by SSR 83–20. This ruling provides:

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.
>
> . . . . .
>
> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. . . .
>
> . . . . .
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. . . .
>
> . . . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s)

occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.

> How long the disease may be determined to have existed at a disabling level of severity depends on the informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.**

SSR 83–20 (emphasis added). The above ruling recognizes that making a determination of the onset date of a disability is very difficult in the context of progressive disabling impairments.

Gullett contends that the evidence indicates that he was disabled after the expiration date of his Title II insured status, and, as a result of the slowly progressive nature of his post-polio syndrome, the onset date of his disability had to be inferred. Therefore, Gullett argues, pursuant to SSR 83–20, the ALJ was required to call a medical advisor to establish the onset date of disability. The Commissioner, on the other hand, contends that a medical advisor was not required because the evidence does not establish that Gullett was disabled at any time on or prior to June 30, 1990. The Magistrate Judge agreed with the Commissioner in this regard.

The Commissioner misconstrues the nature of the directive contained in SSR 83–20. In many instances, a formal finding is made that the onset of a disability occurred prior to expiration of the claimant's insured status, and the only contested issue is the establishment of the onset date of disability for purposes of determining when disability benefits began to accrue within the insured period. However, SSR 83–20 also recognizes that the onset date of disability is relevant in a different circumstance: where evidence indicates that a claimant was disabled after his insured status expired, and the contested issue is the establishment of the onset date of disability for purposes of determining whether the claimant is even eligible for benefits. In this latter circumstance, to trigger the protections of SSR 83–20, a formal finding by

the Commissioner of Gullett's disability after June 30, 1990, is not required. To impose this requirement would create an unjust Catch–22 dilemma [5] for Gullett and others in his position. Gullett would not be able to avail himself of a medical advisor to show that he was disabled before June 30, 1990, unless the ALJ first found that he was disabled after June 30, 1990, but the Commissioner contends that the ALJ is not required to make any determination concerning disability after June 30, 1990. In *Campbell v. Chater*, 932 F.Supp. 1072, 1077 (N.D.Ill.1996), the Commissioner advanced the same argument as in the case at hand. The district court concluded: "Commissioner's suggested approach would throw her own policies out the window in cases where the claimant urges that she was disabled by a progressive impairment but the ALJ has no other independent reason to make a threshold disability determination." *Id.*

■ In order to remedy this dilemma, the medical evidence need not establish that Gullett was disabled on or prior to June 30, 1990. Rather, as long as the medical evidence indicates that Gullett was disabled from a slowly progressive disabling impairment, even after June 30, 1990, and the evidence is ambiguous as to whether the onset of this disability was on or before June 30, 1990, a medical advisor must be utilized. Applying this method of analysis to the case at hand, it is found that the first requirement is met, while the second is not.

The medical evidence that was before the Administrator indicates that Gullett was disabled after June 30, 1990, from a slowly progressive impairment. First and foremost, Dr. Steve E. Rowley wrote a letter stating that Gullett is a hundred percent disabled. R. 176. On March 15, 1991, Gullett saw Dr. Rowley for pain in his left heel and numbness in his right leg. R. 101. On May 28, 1991, Gullett reported multiple joint pain and polyarthralgias. R. 101. In his medical reports regarding Gullett, Dr. Rowley concluded that Gullett suffered from generalized weakness. In a September 9, 1991, medical report, the doctor noted that Gullett reported he suffered from a generalized weakness. R. 157. Gullett also reported bilateral leg pain and discomfort, generalized polyarthralgias, and muscular discomfort. R. 157. In a letter written in 1992, Richard Ulrich, M.D., a neurologist, after conducting a physical examination of Gullett, reported that Gullett suffered from aching, swelling, and paresthesias in his hands, in addition to pain in the lower back and proximal leg region, which worsened with activity. R. 171. Dr. Ulrich concluded that Gullett had bilateral carpal tunnel syndrome, but was not able to identify the etiology of the pain in his back and legs. X-rays taken of Gullett's hands and feet in September 1991 by Dr. E.B. Rockwell revealed osteoarthritic changes and calcaneal spurring of the left foot. R. 163. Finally, Dr. David J. Sloan, in a letter written on August, 22, 1994, reported that he examined Gullett and determined that Gullett's hands are sore and that Gullett suffers from swelling in his joints, polyarthritis which interferes with his furniture upholstery work, and persistent arthralgias. R. 5. This evidence, given Gullett's relevant work as an upholsterer, indicates that in 1991 he was suffering from a slowly progressive and disabling impairment or combination of impairments which resulted in persistent pain in his hands, arms, and legs.

The evidence in the record, however, is not ambiguous as to whether the onset of this disability was on or before June 30, 1990 The onset date of disability need not be inferred because the evidence in the record establishes that Gullett was first disabled at the beginning of 1991. Thus, the Commissioner did not abuse her discretion in failing to consult a medical advisor. In Dr. Ulrich's letter, Gullett reported that the pain in his hands and legs began to interfere with his upholstery work in 1991. R. 171. Furthermore, Dr. John R. Shull writes, in a September 11, 1991, letter, that Gullett said he "has noted gradual progressive weakness over the past 2 years or so but the numbness [in his arms and legs] began only in the past six

---

5. "A paradox in which seeming alternatives actually cancel each other out, leaving no means of escape from a dilemma." *The American Heritage Dictionary of the English Language, New College Edition* (1976).

months." R. 165. Furthermore, Gullett began experiencing his back pain at around January 1991. R. 165. In another report, Gullett told Dr. R. Breckenridge that the pain in his legs may have some relationship to his back injury in April 1991, and that his generalized weakness began in April 1991. Furthermore, although numerous medical records dating from began June 30, 1990, are contained in the record, none of these reports provide evidence of a disabling condition in Gullet's hands, arms, and legs. The only evidence of pain in these areas are medical records from 1985 stating that Gullett reported he was experiencing numbness and discomfort in both of his hands and pain in his shoulder. He was diagnosed with polyarthralgia and carpal tunnel syndrome, which was treated with injections. R. 89, 90. Gullett did make any further complaints of pain or numbness in his hands, arms, or legs until 1991. Based on the evidence in the record. including Gullett's allegations, work history, and medical evidence, it is found that the Commissioner did not abuse her discretion in failing to consult with a medical advisor.[6]

## C. Prior Application

■■■ Gullett next contends that the ALJ erred in failing to make an inquiry at the hearing regarding Gullett's previous application for benefits and whether the failure to pursue the previous application was due to an error by the Social Security Administration. If Gullett's current application is accepted, Gullett contends that the one-year retroactive limitation on benefits should not apply to him because he filed a previous application, which he did not pursue as a result of an error in the reconsideration notice issued in conjunction with the denial of his previous application. The Magistrate Judge held that this claim was moot because, once the ALJ determined that Gullett failed to prove he was disabled, the matter of retroactive benefits was not an issue. It is found that the Magistrate Judge's finding in this

regard should be adopted as the finding of this court. If, on remand, it is found that Gullett's current application for benefits should be granted, Gullett should then re-raise his claim regarding his prior application for benefits.

## D. Declaratory Judgment

■■■ Finally, Gullett objects to the court's failure to identify his case as a motion that has been pending for more than six months, alleging that this failure violates the Civil Justice Reform Act of 1990, 28 U.S.C. § 476. The Magistrate Judge found that this motion should be denied. The Magistrate Judge correctly finds there are no motions in this case that have been pending for more than six months. The filing of a complaint does not constitute the filing of a motion. All cases are treated similarly in this regard. Moreover, this court does not forbid the filing of summary judgment motions in social security cases. It is therefore found that the Magistrate Judge's recommendation dismissing Gullett's motion for declaratory judgment should be adopted.

## IV. *Conclusion*

Because Gullett did not knowingly and intelligently waive his right to counsel in his hearing before the Administrative Law Judge, and because Gullett was thereby prejudiced, the Commissioner's decision denying Gullett disability benefits must be vacated, and this action must be remanded for further proceedings consistent with this opinion. A final judgment, incorporating the adjudications herein set forth, shall be issued simultaneously with the issuance of this memorandum opinion.

---

6. It should be emphasized that this finding is based on the evidence in the record. As discussed above, it is also found that the ALJ failed to adequately develop the record in regards to the onset date of Gullett's disability. If the evidence has been properly developed, Gullett

might have been able to establish that the evidence of the onset date of disability is ambiguous. Gullett will have the opportunity on remand, this time with the benefit of an attorney, to seek to establish an ambiguity.