Lawrence LASTRAPE

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration

No. 1:03 CV 1392.

United States District Court, E.D. Texas, Beaumont Division.

Apr. 21, 2005.

Lawrence Lastrape (pro se plaintiff), for Plaintiff.

Gregory White, Social Sec. Admin., Dallas, TX, Tina M. Waddell, Office of Gen. Counsel, Soc. Sec. Admin., Dallas, TX, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

CLARK, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge **ADOPTED**. A final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

### I. NATURE OF THE CASE

Plaintiff seeks judicial review of the Commissioner of Social Security Administration's (SSA) decision denying his application for Social Security disability benefits. United States district courts may review such decisions. 42 U.S.C. § 405 (2003). However, Congress limits the scope of judicial review to determinations as to whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Moreover, if proper principles of law were applied, and the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co.,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

### II. PROCEEDINGS

Plaintiff applied on November 6, 2001 (Tr. 77, 297), claiming disability due to *"high blood pressure, diabetes, asthma"* (Tr. 104). In a "Reconsideration Disability

---

1. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magis- trate Judges, and Beaumont General Order 03–02.

Report," plaintiff also claimed disabling *chest pain* (Tr. 133).

Plaintiff's claim was denied initially (Tr. 45) and upon reconsideration (Tr. 46). Plaintiff then requested a hearing before an administrative law judge ("ALJ") (Tr. 59). ALJ Gerald Meyer convened an evidentiary hearing on June 17, 2003, at which plaintiff appeared without representation.

At the evidentiary hearing ALJ Meyer received direct testimony from plaintiff, a medical expert,[2] and a vocational expert.[3]

The remaining evidentiary record consisted of reports and treatment notes from treating sources;[4] treating physician's statement;[5] and Case Assessments completed by two medical consultants[6] contracted by Texas Department of Assistive and Rehabilitative Services Division for Disability Determination Services.[7]

### III. THE ADMINISTRATIVE DECISION

ALJ Meyer concluded that plaintiff is not disabled. Specifically, he found that plaintiff's combination of impairments—diabetes mellitus, asthma, and hyperten-

---

2. A medical adviser, at the request of the Social Security Administration, reviews the claimant's medical records and then gives an expert opinion as to the extent of claimant's impairment. *See* 20 C.F.R. § 404.1527(f)(2)(iii) (2004). When a medical professional functions as an expert witness rather than an adviser in the course of an administrative law judge hearing, Social Security Ruling 96–6p designates such professional as a "medical expert." Social Security Ruling 96–6p, 1996.

3. Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 416.966(e) (2004). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan*, 921 F.2d 816, 821 (8th Cir.1990).

4. Plaintiff's medical evidence includes records from the following treating sources:

Records from (1) Gulf Coast Health Center, Inc., in Port Arthur, Texas, document the period from August, 1999, through January, 2001; (2) Jefferson County Health Unit, Port Arthur, Texas, from January 31, 2001, through February 20, 2002, and from May 13, 2002, through September 26, 2002; (3) University of Texas Medical Branch in Galveston, Texas, from September, 2001, through De-

cember, 2002; (4) Christus St. Mary outpatient clinic in Port Arthur, Texas, indicate that plaintiff was treated from December, 2000, through February, 2002.

5. Treating physician Dr. A.C. Walkes, M.D., associated with Jefferson County Health Unit Two, in Port Arthur, Texas.

6. Dr. William O. Cleland, M.D., and Dr. John H. Durfor, M.D., served as medical consultants. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2002). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2004).

7. "The DARS [Department of Assistive and Rehabilitative Services] Division for Disability Determination Services (DDS), funded entirely through the Social Security Administration (SSA), makes disability determinations for Texans with severe disabilities who apply for Social Security Disability Insurance and/or Supplemental Security Income." *Texas Department of Assistive and Rehabilitative Services: Disability Determination Services*, available at http://www.dars.state.tx.us/services/dds (March 23, 2005).

sion—do not prevent him from performing work at the "sedentary exertional level," with "no exposure to dust, fumes, noxious odors, mists, gases, and poor ventilation." Tr. 16, Finding 7. He therefore found that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." Tr. 16, Finding 13.

## IV. MOTION FOR SUMMARY JUDGMENT

Because plaintiff proceeds *pro se,* the court ordered the Commissioner to file a transcript of administrative proceedings (Dkt. No. 11), and requested that the Commissioner accompany the transcript with a motion for summary judgment should the Commissioner advocate affirming the administrative disposition (Dkt. No. 12). On June 17, 2004, the Commissioner filed the administrative transcript and a motion for summary judgment. Dkt. No. 13. The Commissioner argues that plaintiff's evidence failed to demonstrate disability, and that ALJ Meyer's decision is supported by substantial evidence of record.

Plaintiff's response disagrees. Plaintiff points to evidence which plaintiff perceives as favoring his application, and personally attests that he is in fact disabled and unable to perform the work that ALJ Meyer concluded he can do. Plaintiff asks the court to accept this evidence and find him disabled. Plaintiff also argues that the Commissioner's brief is inaccurate when stating that plaintiff took Maalox for pain relief. Plaintiff argues that he takes prescribed Prevacid instead. *Id.* at p. 4.

## V. DISCUSSION AND ANALYSIS

The Commissioner's motion defends her decision rather than impugning it. The court cannot reasonably expect more. To order the Commissioner to ferret out possible errors and argue them in plaintiff's behalf would, at best, be akin to asking the fox to guard the hen house.

The lay plaintiff, predictably, invites the court to re-weigh the evidence and direct the Commissioner to award benefits. Plaintiff's unfamiliarity with legal terms of art such as "substantial evidence" and lack of expertise in arcane rules governing administrative adjudication of social security applications handicap plaintiff in articulating cognizable grounds for judicial review.

The parties' submissions, while useful in the sense of getting the administrative record before the court and for familiarizing the court with basic contentions, do not focus well on the critical issues that courts can address in limited judicial review under Section 405(g). The court, therefore, must function *sua sponte* to a great extent.

## A. Analytical Model In *Pro Se* Actions For Judicial Review of Agency Action

No statute, regulation or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner of Social Security. Necessarily, the level of scrutiny rests in sound discretion of each reviewing court. However, several universal principles factor logically into that equation. Courts must construe *pro se* pleadings and arguments liberally in light of a party's lay status, but must zealously guard their *raison d'être* as neutral and unbiased arbiters. Courts are not bound to "scour the record for every conceivable error," [8] but fundamental fairness and interests of justice require that courts not disregard obvious errors, espe-

---

8. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) (citing *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)); *Benson v. Commissioner of Social Security Administration,* No. 9:02cv57, 2004 WL 3237348, at *3 (E.D.Tex. Aug.30, 2004); *Hoffman v. Barnhart,* No. 1:00cv605, 2002 WL 31220354, at *8 (E.D.Tex. Oct.4, 2002).

cially when a lay litigant's ignorance may cause legal errors to go unrecognized.

To strike a fair balance, the court should engage in more than a superficial review of the Commissioner's decision. However, since the court is not an advocate, it has no duty to plumb the depths of every facet of the administrative process. How deeply to probe is inherently imprecise, and most likely governed by unique facts of any given case. In this instance, however, the undersigned elects to examine the decision to the same extent as would an experienced lawyer when advising a potential client regarding advisability of pursuing an action for judicial review. This approach assumes that the practitioner is experienced in the subject matter, and willing, but not compelled, to represent the plaintiff. It further assumes that the practitioner's first exposure to the case is after the Commissioner's decision has become final.

A seasoned practitioner would first examine whether the Commissioner's decision generally reflects the protocol established under the Commissioner's own regulations. Next, the practitioner would focuses on ALJ Meyer's critical findings, and review them for compliance with applicable law. Finally, the practitioner would examine the evidentiary record to determine whether substantial evidence supports those critical findings.

## B. Decisional Protocol

### 1. Pro Se Status

 Plaintiff proceeded *pro se* before ALJ Meyer, who could not proceed without first securing a valid waiver of the claimant's right to counsel.[9] Moreover, upon receiving a valid waiver, ALJ Meyer then had a *heightened duty* to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978)); *see also Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982); *Gullett v. Chater*, 973 F.Supp. at 622.[10]

 Here, ALJ Meyer complied with both responsibilities. Plaintiff received notice of his right to counsel both in writing and again orally before the evidentiary hearing. ALJ Meyer informed plaintiff of his right to counsel and advised him of the assistance a representative could provide

9. A social security claimant has a right to counsel at any social security hearing. 42 U.S.C. § 406. Waiver of right to counsel must be "knowingly and intelligently effected." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D.Tex.1997), citing *Brock v. Chater*, 84 F.3d 726, 729 n. 1 (5th Cir.1996). Even a claimant who states unequivocally that (s)he waives right to counsel must have received adequate notice of "the scope of [that] right." *Gullett v. Chater*, 973 F.Supp. at 620. To ensure adequate notice the ALJ must apprize claimant of (a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits. *Gullett v. Chater*, 973 F.Supp. at 620, citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981). Additionally, notice of right to counsel should be provided prior to the hearing, and at the hearing the ALJ should ascertain whether claimant had a "meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity." *Gullett v. Chater*, 973 F.Supp. at 621, citing *Frank v. Chater*, 924 F.Supp. 416, 426 (E.D.N.Y.1996).

10. An administrative law judge's failure to carry out this duty precipitates a decision not informed by sufficient facts, and, consequently, is considered unsupported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 704 (5th Cir.1986); (quoting *Kane v. Heckler*, 731 F.2d at 1219); *see also Brock v. Chater* 84 F.3d 726 (5th Cir.1996); *Davis v. Califano*, 599 F.2d 1324 (5th Cir.1979); *McGee v. Weinberger*, 518 F.2d 330 (5th Cir.1975).

710

in advancing his case. He identified possible sources of free counsel and explained contingency arrangements. He informed plaintiff regarding limitation of attorney fees to twenty-five percent of past due benefits. Plaintiff nevertheless chose to proceed with the hearing and represent himself, stating:

*"[N]o one knows me better than me."*

Tr. 23. ALJ Meyer fulfilled his duty to fully inform plaintiff regarding right to counsel.

■ Second, ALJ Meyer amply developed the evidentiary record. He allowed plaintiff to testify fully, and he helped to clarify, amplify and focus that testimony through helpful questioning. ALJ Meyer actively solicited plaintiff's own description of his impairments when ALJ Meyer examined the Medical Expert and the Vocational Expert. ALJ Meyer obtained medical records from all known sources. Plaintiff proffers no evidence presented to ALJ Meyer which he overlooked or failed to include in the record. The court cannot discern any relevant evidence which ALJ Meyer failed to consider.

This initial inquiry, therefore, fails to disclose any flaw in the proceeding.

### 2. *Sequential Analysis*

Regulations require a five-step sequential analysis for initial disability determinations. The five-step sequential analysis for determining applications for benefits based on disability is approved by courts. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").[11]

ALJ Meyer faithfully proceeded through all five steps. ALJ Meyer's analysis generally *favored* plaintiff because sequential analysis proceeds to step five *only* when an ALJ concludes that the claimant has carried his burden of establishing a *prima facie* case of disability through the first four steps. At step five, the burden shifts to the Commissioner to show that a claimant is capable of performing alternative available work.

ALJ Meyer found that plaintiff's combination of impairments—diabetes mellitus, asthma, and hypertension—do not prevent him from performing work at the "seden-

---

11. The five steps are as follows:
 1. The Commissioner ascertains *whether the applicant is currently engaging in substantial gainful activity.* (If so, a finding of non-disability is entered and the inquiry ends.)
 2. The Commissioner determines *if the applicant's impairment or combination of impairments is severe,* that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. (If not, the inquiry ends and a finding of non-disability is entered.)
 3. The Commissioner determines *whether the severe impairment equals or exceeds those in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1* (2004)("the Listings"). (If so, disability is presumed and benefits are awarded.)
 4. The Commissioner determines *whether the impairment prevents the individual from engaging in his regular previous employment.* (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.) *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).
 5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.* (If the Commissioner establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See Id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986); 20 C.F.R. § 404.1520(a)-(f) (2004)).

tary exertional level," with "no exposure to dust, fumes, noxious odors, mists, gases, and poor ventilation." Tr. 16, Finding 7. VE Swisher testified that a person with that functional capacity and those limitations can work as a telemarketer, an electronics components worker, and an assembler. Tr. 36–37. ALJ Meyer therefore found that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." Tr. 16, Finding 13.

Again, there is no apparent error in the manner that ALJ Meyer went about reaching a decision.

## C. Critical Findings

ALJ Meyer's step five finding of plaintiff's ability to perform available alternative employment is supported by expert vocational testimony from Cheryl Swisher, a certified rehabilitation counselor, holding a Master of Arts degree in counseling. A finding based on such testimony generally must be upheld by the court unless it is undermined by erroneous predicate findings occurring earlier in the sequential analysis. Seasoned counsel, therefore, would examine those predicate findings.

While every finding in the five-step sequential analysis is important, only those arguably adverse to a claimant are likely to be a source of reversible error. There are only two findings that fall into this category:

▶ Step three finding that plaintiff's impairments do not meet or equal presumptively-disabling impairments catalogued in "the Listings;" and

▶ Step five finding that plaintiff's residual functional capacity allows him to perform alternative work at the sedentary level.

These two critical findings are addressed next.

### 1. *The Listings*

"The Listings" is a shorthand reference to Appendix I, Subpart P, Part 404 of the Regulations. That Appendix lists various impairments and indicators of their medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. I (2004). Impairments found in "the Listings" are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d), Soc. Sec. R. 88–3c (1988). Accordingly, the Listings function as a shortcut for claimants with impairments that render them *per se* disabled. *Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir.1989); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984) (stating that the "appendix relied upon by the district court is a listing of 'per se disabilities' and should be used only if the claimant has satisfied the Secretary that her impairment is severe" and citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir.1983) and 20 C.F.R. § 404.1525(a), 416.920(d)).

The claimant's burden is to provide and identify findings that support *all* of the criteria for a Step 3 impairment determination. *McCuller v. Barnhart*, 72 Fed. Appx. 155, 158 (5th Cir.2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.1990); 20 C.F.R. § 404.1526(a). If the plaintiff fails, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders v. Sullivan*, 914 F.2d at 620. Courts acknowledge that the criteria in the Listings are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994).

■ Here, ALJ Meyer compared each impairment that he found "severe" at step two (asthma, diabetes, hypertension) with its corresponding Listing at step three. Relying primarily on testimony of Giao N. Hoang, M.D.,[12] called as a medical expert,

---

**12.** Dr. Hoang testified that plaintiff's impair- ments do not meet Listing 9.08 for diabetes,

ALJ Meyer determined that plaintiff's impairments, singly or in combination, fail to meet Listings criteria to prove disability *per se.* Tr. 12. Dr. Hoang clearly was qualified to express an opinion as to whether plaintiff's impairments were of Listings level severity,[13] and he articulated plausible, underlying reasons for his opinion in adequate detail. Tr. 31–32, 35.

Finally, even cursory review of the evidentiary record fails to disclose a basis for finding Listings level severity for any of plaintiff's impairments. Listing 3.03 for asthma requires proof of *"chronic asthmatic bronchitis,"* or *"attacks ... in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months."* Plaintiff's medical evidence fails to demonstrate these criteria. To satisfy Listing 9.08 for diabetes mellitus, a claimant must prove *"neuropathy demonstrated by ... disorganization of motor function in two extremities,"* or *"acidosis occurring at least on the average of once every 2 months,"* or *"retinitis proliferans."* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08 (2004). Plaintiff's medical records contain no such evidence. Finally, plaintiff's medical records are devoid of proof of *chronic heart failure* or *ischemic heart disease,* required to meet or equal Listing 4.03 for hypertensive cardiovascular disease. *Id.* § 4.03.

In light of all of the above, there is no basis for concluding that ALJ Meyer erred with respect to his step three determination.

Listing 3.03 for asthma, or Listing 4.03 for hypertension. Tr. 31–32, 35.

**13.** An ALJ may rely upon testimony of a medical expert, who "is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971).

## 2. *Residual Functional Capacity*

Often, an ALJ's *residual functional capacity* determination is a fertile field for error. Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2004). In the latter stages of sequential analysis, the Commissioner decides whether an applicant, notwithstanding severe impairment, has the physical and mental ability to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* 20 C.F.R. § 404.1545; Social Security Ruling 96–8p, 61 Fed.Reg. 34474 (July 2, 1996). The Commissioner then utilizes this assessment in determining whether a claimant can still perform past relevant work (step four) or alternative available work as it is generally performed in the national economy (step five).

■ Here, ALJ Meyer determined that plaintiff has residual functional capacity for work at the sedentary exertional level.[14] ALJ Meyer further determined, however, that plaintiff can perform only sedentary work involving no exposure to dust, mists, gases, fumes, odors and extreme temperatures. Tr. 16, Finding 7. In reaching this conclusion, ALJ Meyer clearly discounted or rejected entirely the opinion of a treating physician, A.C. Walkes, M.D., who twice stated in connection with plaintiff's annual applications for food stamps that plaintiff *"cannot work"* for *"1 yr"*

**14.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2004).

due to diagnoses of asthma, diabetes and hypertension. Tr. 222; 223.

In this circumstance, competent counsel contemplating an action for judicial review would examine ALJ Meyer's decision and the underlying evidentiary record with respect to three rudimentary questions relating to the residual functional capacity determination:

▶ Did ALJ Meyer follow the analytical model specified by regulation for making residual functional capacity determinations?

▶ Did ALJ Meyer err when rejecting or discounting the treating physician's opinions that plaintiff "cannot work?"

▶ Does substantial evidence support ALJ Meyer's determination that plaintiff has residual functional capacity for sedentary work?

### a. Function–by–Function Assessment

To guide claims adjudicators, the Commissioner's regulation directs administrative adjudicators to consider seven ordinary physical functions. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b). The Commissioner provides even more explicit and detailed directions in a Ruling which directs adjudicators to perform a *function-by-function assessment.* The Ruling requires an adjudicator to perform this assessment, function-by-function, *before* expressing RFC in terms of exertional levels of work. Soc. Sec. R. 96–8p (1996).

Here, ALJ Meyer clearly employed the proper analytical model. He cited the correct regulation and ruling, indicating his awareness of the governing standard. Tr. 12. His decision discusses the relevant physical functions, to the extent there is evidence thereof, before he expresses plaintiff's residual functional capacity in terms of an exertional level. Tr. 13. Hence, there is no apparent structural error in the manner in which ALJ Meyer went about determining plaintiff's residual functional capacity.

### b. Weight Afforded Treating Physician Opinion

As mentioned earlier, treating physician, A.C. Walkes, M.D., opined in two food stamp application forms that plaintiff "cannot work." ALH Meyer, however, determined that plaintiff can work at certain sedentary occupations. What significance should courts attribute to tension between the physician's opinion and the ALJ's finding?

Treating physicians' opinions on *medical issues,* i.e., the nature and severity of a patient's impairment ordinarily are entitled to *controlling weight.*[15] However, treating physicians' opinions on *ultimate issues governing entitlement to benefits* are entitled to no special significance.[16] An ALJ is under no obligation to accord controlling weight to a physician's opinion that a claimant cannot work because that determination is reserved to the Commissioner. *See* 20 C.F.R. 404.1529(e). In fact, an ALJ is expressly prohibited from giving controlling weight to such opinions because it would, in effect, abdicate the Commissioner's statutory authority to make such determinations. *See* Social Security Ruling 96–5p, 61 F.R. 34471, 34473 (July 2, 1996). Thus, the mere fact that ALJ Meyer did not defer to Dr. Walkes's

**15.** *See* 20 C.F.R. § 404.1527(d)(2); SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996); *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985) (citing *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984)); *see also Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001) (citing *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994) (internal citations omitted)); *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995).

**16.** *See* 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003).

assessment of plaintiff's ability to work is of no particular significance because that assessment constituted ultimate-issue opinion.

A more momentous issue would exist had ALJ Meyer rejected Dr. Walkes's medical assessment of the nature and severity of plaintiff's impairments. However, there is nothing in ALJ Meyer's decision suggesting that he rejected or ignored Dr. Walkes's medical assessments. Rather, ALJ Meyer fundamentally agreed with those assessments by finding that plaintiff has the impairments diagnosed by Dr. Walkes, and by further finding that those impairments are severe.

There was no error in ALJ Meyer's handling of Dr. Walkes' opinion.[17]

### c. Substantial Evidence

Upon determining that ALJ Meyer followed proper procedures when determining residual functional capacity, and upon further determining that ALJ Meyer did not err in rejecting ultimate-issue opinion of a treating physician, the only remaining areas of interest are whether ALJ Meyer's residual functional capacity determination and his subsequent finding that plaintiff can perform available alternative employment are supported by substantial evidence.

### i. Definition

 Substantial evidence is more than a scintilla, but less than a preponderance.

Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992). It requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Marcello v. Bowen, 803 F.2d 851, 853 (5th Cir.1986) (citing Jones v. Heckler, 702 F.2d 616, 620 (5th Cir.1983). The evidence must be ")enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Bd. v. Columbian Enameling & Stamping Co., 306 U.S. 262, 299–300, 59 S.Ct. 206, 217 (1938), cited in Harvey L. McCormick, SOCIAL SECURITY CLAIMS AND PROCEDURES § 672, at 193 & n.1 (4th ed.1991).

### ii. Residual Functional Capacity Finding

Substantial evidence supports ALJ Meyer's finding that plaintiff retains the exertional capacity for sedentary work. Plaintiff himself testified that he can lift ten pounds for five or ten minutes at the time. Tr. 27. He also testified that he can walk or stand occasionally. Tr. 34. Nothing in plaintiff's medical records intimates the contrary, as it reflects mostly conservative treatment to maintain medications and monitor symptoms.[18] The evidence includes no medical findings of functional limitations, and no physician-imposed functional restrictions.[19] No evidence indicates

---

**17.** The record does not disclose whether plaintiff's applications for food stamps were granted, and if so, whether the basis for the agency's action was physical or mental unfitness for work. However, since eligibility standards for other government benefit programs, such as food stamps and veteran benefits differ from social security eligibility standards, the court cannot say that an ALJ errs simply because the ALJ does not give great weight to the other agency's determination. See e.g., Chambliss v. Massanari, 269 F.3d 520, 522–23 (5th Cir.2001).

**18.** See Parfait v. Bowen, 803 F.2d 810, 813–14 (5th Cir.1986) (evidence of conservative treatment for alleged disabling conditions discredits claimant's allegations of disability).

**19.** See Hollis v. Bowen, 837 F.2d 1378, 1387 (5th Cir.1988) (lack of medical restrictions or limitations bears upon plaintiff's credibility with respect to alleged impaired ability to work).

either that treatment does not successfully alleviate symptoms. See Tr. 229, 226, 242. While there is no specific evidence regarding degradation of plaintiff's work capacity when exposed to extreme temperatures or environmental, dust, mists, etc., this limitation is reasonable in light of plaintiff's severe asthma, and, in any event, was a finding in plaintiff's favor.

In sum, the court's review of the record reveals substantial evidence that plaintiff can perform work at the sedentary exertional level with the limitations which ALJ Meyer imposed.

iii. *Alternative Available Work Finding*

Finally, ALJ Meyer's step five finding that plaintiff can perform alternative available work as a telemarketer, electronics components worker, or assembler is supported by expert vocational testimony. Such testimony constitutes substantial evidence when the hypothetical question which elicited it incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *Morris v. Bowen*, 864 F.2d 333 (5th Cir.1988). Here, ALJ Meyer posited a hypothetical question which included capacity for sedentary work with environmental limitations: "no exposure to dust, mists, gases, fumes, odors, et cetera, no exposure to extreme temperatures." Tr. 36. ALJ Meyer's hypothetical question reasonably incorporated both the RFC and limitations which are supported by substantial evidence. Expert vocational testimony in response cited jobs which can be performed at that exertional level with the specified restrictions. Therefore, ALJ Meyer's reliance on such testimony is valid, and his determination that plaintiff can perform alternative employment is supported by substantial evidence.

## VI. RECOMMENDATION

The Commissioner's motion for summary judgment should be granted and this case dismissed.

## VII. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

March 24, 2005.